

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-7-2002

# Grayson v. Mayview State Hosp

Precedential or Non-Precedential: Precedential

Docket No. 99-3980

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Grayson v. Mayview State Hosp" (2002). *2002 Decisions.* Paper 329.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/329

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 7, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3980

NORMAN GRAYSON,

Appellant

v.

MAYVIEW STATE HOSPITAL; ALLEGHENY COUNTY JAIL;
CAMP HILL PRISON

*United States of America,

Intervenor

*(Pursuant to Court Order dated 4/4/01)

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 99-479)
District Judge: Honorable Gary L. Lancaster

Argued: April 6, 2001

Before: SCIRICA, AMBRO and GIBSON,
Circuit Judges**

(Filed: June 7, 2002)

_____

** The Honorable John R. Gibson, Senior Circuit Judge, United States
Court of Appeals for the Eighth Circuit, sitting by designation.


Nancy Winkelman
J. Denny Shupe (Argued)
Schnader, Harrison, Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA 19103
 Counsel for Appellant

John G. Knorr, III
Calvin R. Koons
J. Bart DeLone (Argued)
Office of the Attorney General
 of Pennsylvania
Department of Justice
Strawberry Square, 15th Floor
Harrisburg, PA 17120
 Counsel for Appellees
Mayview State Hospital and
Camp Hill Prison

David W. Gray
Jeanette H. Ho (Argued)
Pietragallo, Bosick & Gordon
301 Grant Street
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
  Counsel for Appellee
Allegheny County Jail

Richard A. Olderman
United States Department of Justice
Civil Division, Appellate Staff
601 D Street, N.W., Room 9128
Washington, DC 20530
  Counsel for Intervenor
United States of America

2

OPINION OF THE COURT

AMBRO, Circuit Judge:

Norman Grayson, an inmate at various times of the three institutions named as defendants, brought this pro se damages action under 42 U.S.C. S 1983, alleging the defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. The District Court granted Grayson leave to proceed in forma pauperis, but denied his further request for appointed legal counsel. Upon the defendants' motions, the Court dismissed Grayson's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Although the Court found that his claims had possible substantive merit if pled adequately, it did not provide leave to amend before dismissing the action. This was contrary to our Court's rule, established before Congress enacted the Prison Litigation Reform Act ("PLRA"),1 that such leave must be granted when amendment could cure the deficiency and would not be inequitable. See Dist. Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986); Darr v. Wolfe , 767 F.2d 79, 81 (3d Cir. 1985); Borelli v. City of Reading, 532 F.2d 950, 951 n.1 (3d Cir. 1976); see also Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)(discussing pre-PLRA law).

The primary question presented on appeal is whether S 804(a)(5) of the PLRA, codified at 28 U.S.C.S 1915(e)(2), altered the legal landscape so that the District Court did not need to grant leave to amend before dismissing Grayson's deficient in forma pauperis complaint. We addressed a similar provision of the PLRA in Shane, a non-in-forma-pauperis case. There we held that S 803(d) of the PLRA, codified in part at 42 U.S.C. S 1997e(c)(1), did not alter our rule that inadequate complaints should be dismissed without granting leave to amend only if

_____

1. Despite its name, the PLRA was actually passed in 1996 as Title VIII

of the Omnibus Consolidated Recissions and Appropriations Act of 1996.
See Pub. L. No. 104-134, Title VIII, SS 801-10, 110 Stat. 1321 (1996)
(codified in scattered sections of the United States Code).

amendment would be inequitable or futile. Shane , 213 F.3d
at 116-17. However, we reserved the question of whether
the nearly identical S 1915(e)(2) should be interpreted
differently. Id. at 117. Today we reach that question and
hold that S 1915(e)(2) requires the same response.2

I.

Grayson's complaint alleges that surgery was performed
on his knee in early 1998 at the Mayview State Hospital to
correct an injury he sustained playing basketball. While the
complaint names the Hospital, it does not allege that he
received negligent or inadequate care there. Later in 1998,
Grayson was transferred to the Allegheny County Jail,
where he claims his "leg ropes"3  were confiscated and his
requests for medical assistance were refused. While
incarcerated there, Grayson's knee injury worsened after a
fall in a stairwell occasioned by a defective handrail, which
fell out of the wall while he was handcuffed to another
prisoner for transport to a court hearing. He claims that he
requested medical assistance after the fall, but received
none. Grayson was later transferred to a third facility and
eventually to the Camp Hill Prison ("SCI-Camp Hill"), where
he alleges three or four weeks passed before he received
treatment for his knee. Grayson's complaint does not name
any individual defendants. It also fails to allege that any of
the facilities where he was kept maintains a pattern or
practice of denying medical assistance to inmates.

The defendants responded to Grayson's complaint by
moving to dismiss for failure to state a claim. The Hospital
and SCI-Camp Hill, both agencies of the Commonwealth of

_____

2. In this context, we need not consider Grayson's contentions that (1) an
in forma pauperis plaintiff 's fundamental right of access to the courts is
violated if he is denied leave to amend an inadequate complaint, (2) it
would violate equal protection to deny in forma pauperis plaintiffs the
procedural safeguards afforded prisoner plaintiffs under Shane, and (3)
that the District Court erred under Tabron v. Grace, 6 F.3d 147, 153 (3d
Cir. 1993), by not requesting counsel to represent him under 28 U.S.C.
S 1915(e)(1).

3. Though we have no further explanation of this term, we assume
Grayson refers to a knee brace of some sort.

Pennsylvania, argued that the Eleventh Amendment barred
Grayson's claims against them. The Jail, an agency of
Allegheny County, argued that Grayson failed to plead that
it had a policy, practice, or custom of deliberate indifference

toward prisoners' requests for medical treatment. The District Court referred the action to a Magistrate Judge, who recommended granting the motions to dismiss. In the course of these proceedings Grayson filed a self-styled "Memorandum Order" that further explained the factual basis for his suit and identified allegedly responsible individuals. Other than invoking the term "deliberate indifference" to describe the conduct of the defendants, the "Memorandum Order" was not responsive to the arguments made in the motions to dismiss.

The District Court considered Grayson's "Memorandum Order" and the Magistrate Judge's recommendation. In a brief statement, the Court adopted the recommendation and dismissed Grayson's action without further comment. Grayson appealed[4] and our Court appointed pro bono counsel.[5]

II.

Before considering the effect of S 1915(e)(2) on in forma pauperis complaints, we address whether Grayson's complaint should have been dismissed under pre-PLRA law.

Grayson does not dispute that his claims against the two Commonwealth defendants, Mayview State Hospital and SCI-Camp Hill, were properly dismissed on Eleventh Amendment grounds under Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Rather, he contests only the dismissal of his claim against the Allegheny County Jail. Grayson maintains that his "Memorandum Order," submitted in response to the defendants' motions to dismiss, contained sufficient factual statements to meet the pleading requirements of a "short and plain statement of

_____

4. The District Court had jurisdiction pursuant to 28 U.S.C. SS 1331, 1343(a)(3). We have jurisdiction under 28 U.S.C.S 1291.

5. We acknowledge with appreciation the able and zealous pro bono representation of Grayson by Nancy Winkelman and J. Denny Shupe.

the claim." Fed. R. Civ. P. 8(a). According to Grayson, his allegations support a claim of deliberate indifference to his medical needs in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

Were Grayson's claims made against an individual defendant, the contents of his complaint and "Memorandum Order" would adequately place that defendant on notice that he alleges deliberate indifference to his medical needs. But Grayson is not suing any individual;[6] he seeks relief only from the Jail. Hence the stringent requirements for municipal liability apply:

Grayson must allege that a "policy or custom" of the Jail
was the "moving force" behind a violation of his Eighth
Amendment rights. See Bd. of County Comm'rs of Bryan
County v. Oklahoma, 520 U.S. 397, 404 (1997); Berg v.
County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).
Because Grayson alleges a constitutional violation was
committed by the Jail's employees, rather than by the Jail
itself, to satisfy the "moving force" requirement he must
allege that the Jail was deliberately indifferent to the
possibility that such a violation would occur. Bryan County,
520 U.S. at 407; Berg, 219 F.3d at 276.

Neither Grayson's complaint nor his "Memorandum
Order" alleges that the Jail had a policy of denying medical
treatment to inmates. Nor does he allege that other inmates
suffered similar deprivations of medical attention that
might establish a custom. See Bielevicz v. Dubinon, 915
F.2d 845, 850 (3d Cir. 1990). Lacking any indication from
Grayson's filings of what policy or custom he seeks to
challenge under S 1983, we cannot say that the Jail had
"fair notice of what the plaintiff 's claim is and the grounds
upon which it rests." Conley v. Gibson, 355 U.S. 41, 47
(1957).

Having determined that the District Court correctly
concluded that Grayson's filings were inadequate, we turn

_____

6. Grayson's "Memorandum Order" erroneously states that he is suing
various individuals, even though none was joined as a defendant.

6

to the manner in which the Court dismissed his action.
Under Rule 15(a), if a plaintiff requests leave to amend a
complaint vulnerable to dismissal before a responsive
pleading is filed, such leave must be granted in the absence
of undue delay, bad faith, dilatory motive, unfair prejudice,
or futility of amendment. Foman v. Davis, 371 U.S. 178,
182 (1962); In re Burlington Coat Factory Sec. Litig., 114
F.3d 1410, 1434 (3d Cir. 1997). The first four of these
reasons devolve to instances where permitting amendment
would be inequitable.7 Thus amendment must be permitted
in this context unless it would be inequitable or futile. "Of
course, the grant or denial of an opportunity to amend is
within the discretion of the District Court, but outright
refusal to grant the leave without any justifying reason [i.e.,
inequity or futility] appearing for the denial is not an
exercise of discretion; it is merely abuse of that discretion
and inconsistent with the spirit of the Federal Rules."
Foman, 371 U.S. at 182.

When a plaintiff does not seek leave to amend a deficient
complaint after a defendant moves to dismiss it, the court
must inform the plaintiff that he has leave to amend within
a set period of time, unless amendment would be
inequitable or futile. See Shane, 213 F.3d at 116 (internal
quotation marks omitted); see also Dist. Council 47, 795
F.2d at 316; Darr, 767 F.2d at 81; Borelli, 532 F.2d at 951

n.1. Indeed, "we have never required plaintiffs to request leave to amend" in this context. Dist. Council 47, 795 F.2d at 316.

The District Court did not follow these principles. Before it dismissed the case, the Court should have--absent inequity or futility of amendment--specifically advised Grayson that he could amend his complaint and given him a chance to do so. Neither inequity nor futility of amendment is present. There is no suggestion that Grayson lacks good faith or proper motives. As noted above, a properly amended complaint would state a claim upon which Grayson could obtain relief, and none of the defendants suggests otherwise.

---

7. Moreover, some of them overlap (e.g., dilatory motive is but an example of bad faith).

Finally, we cannot say that Grayson's receipt of the defendants' motions to dismiss and the Magistrate Judge's recommendation constitutes the functional equivalent of the procedure outlined in our cases. See, e.g. , Shane, 213 F.3d at 116. The motions and recommendation apprised Grayson of his pleadings' deficiencies, but failed to inform him "expressly" that he could amend his complaint to fix the problem.8 Borelli, 532 F.2d at 951 n.1. Therefore, under our pre-PLRA precedent, the District Court erred. It should have told Grayson that he had leave to amend his complaint to cure its deficiencies and granted him a set period of time in which to do so.9

III.

The defendants contend that 28 U.S.C. S 1915(e)(2) required the District Court to dismiss Grayson's complaint without providing leave to amend. While the Court did not rely on the PLRA, we can affirm on any ground supported by the record. Hughes v. Long, 242 F.3d 121, 122 n.1 (3d Cir. 2001).

As amended by the PLRA, S 1915(e)(2) states the following:

---

8. Indeed, the Magistrate Judge's recommendation may have contributed to Grayson's confusion on what was required to survive dismissal. It states that, to make a showing of municipal liability on Grayson's claims, he "must demonstrate reckless or intentional indifference . . . or a policy or custom on the part of the defendant resulting in injury." However, both deliberate indifference and a policy or custom of the defendant municipality are necessary to maintain aS 1983 suit such as Grayson's. See Bryan County, 520 U.S. at 403-07; Berg, 219 F.3d at 276. While Grayson's subsequently filed "Memorandum Order" mentioned deliberate indifference, it did not identify a "policy or custom," perhaps in reliance on the recommendation's disjunctive phrasing.

9. We cannot say that Grayson's "Memorandum Order" is properly construed as a motion to supplement his complaint or declaration that he will stand on his pleadings. Indeed, the District Court characterized the "Memorandum Order" as "objections" to the Magistrate's recommendation, not as an amended pleading. For the sake of clarity, a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint through any document short of an amended pleading.

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal--
>
>  (i)  is frivolous or malicious;
>
>  (ii)  fails to state a claim on which relief may be granted; or
>
>  (iii) seeks monetary relief against a defendant who is immune from such relief.

While this provision is limited to in forma pauperis plaintiffs,[10] at least two other provisions of the PLRA contain similar dismissal requirements. For prisoners seeking relief from "a governmental entity or [its] officer or employee," PLRA S 805(a), codified at 28 U.S.C. S 1915A, provides a screening process to separate cognizable claims from those lacking merit.[11] Like S 1915(e)(2), the screening process of S 1915A

---

10. Although the language of S 1915(e)(2) does not expressly limit the provision's reach to in forma pauperis claims, we believe Congress intended it to be so limited. See Benson v. O'Brian, 179 F.3d 1014, 1016-17 (6th Cir. 1999). The provision is located within S 1915, entitled "Proceedings in forma pauperis," and it replaces S 1915(d), which only applied to in forma pauperis claims. Id.  at 1016. Further, a contrary interpretation expanding S 1915(e)(2) to all suits would both alter radically the process of civil litigation in federal courts and make similar provisions of the PLRA superfluous. Id. at 1017. Indeed, we have previously stated that "Section 804 of the PLRA, which amends 28 U.S.C. S 1915, redefines the rights and obligations of litigants who are granted in forma pauperis status." Santana v. United States, 98 F.3d 752, 753-54 (3d Cir. 1996).
11. The relationship between the screening provision in 28 U.S.C. S 1915A and the other dismissal provisions, 28 U.S.C. S 1915(e)(2) and 42 U.S.C. S 1997e(c), was well explained in McGore v. Wrigglesworth, 114 F.3d 601, 608 (6th Cir. 1997). Section 1915A "is applicable at the initial stage of the litigation, while S 1915(e)(2)[and 42 U.S.C. S 1997e(c) are] . . . applicable throughout the entire litigation process." Id. Thus, the PLRA sets up a two-step dismissal process by which dismissal can occur early for the facially inadequate complaints pursuant to the screening statute or can occur later by either of the remaining provisions "should it become apparent that the case satisfies [one of these] sections." Id.

targets claims that are "frivolous, malicious, or fail[ ] to state a claim upon which relief may be granted; or .. . seek[ ] monetary relief from a defendant who is immune from such relief." 28 U.S.C. S 1915A. Similarly, pursuant to PLRA S 803(d), codified in part at 42 U.S.C.S 1997e(c)(1), prisoners challenging prison conditions will have their complaints dismissed for the same reasons.

Because Grayson is a prisoner proceeding in forma pauperis and challenging the conditions of his confinement, all three of these PLRA provisions could apply to his case. However, S 1915A is not at issue because the District Court did not implement a screening process. Moreover, under Shane S 1997e(c)(1) does not support the Court's failure to grant leave to amend. See 213 F.3d at 117. Therefore, to prevail the defendants must convince us to treat S 1915(e)(2) differently from the similar provision, S 1997e(c)(1), at issue in Shane. 12

Sections 1915(e)(2) and 1997e(c)(1) apply to different (though often overlapping) sets of claimants, but the differences end there. Section 1997e(c)(1), the provision at issue in Shane, states that a district court

> shall on its own motion or on the motion of a party
> dismiss any action brought with respect to prison
> conditions . . . by a prisoner . . . if the court is satisfied
> that the action is frivolous, malicious, fails to state a
> claim upon which relief can be granted, or seeks
> monetary relief from a defendant who is immune from
> such relief.

42 U.S.C. S 1997e(c)(1). We concluded in Shane that S 1997e(c)(1) did not affect our pre-PLRA requirement that, where a defendant moves to dismiss a deficient complaint, the court should grant leave to amend unless amendment

_____

12. The parties' discussion is limited to S 1915(e)(2)(B)(ii), which mandates dismissal when a complaint "fails to state a claim upon which relief may be granted." Because Grayson also sued the Hospital and SCI-Camp Hill, both of which are immune from liability, subsection (iii)-- which applies to actions seeking "monetary relief against a defendant who is immune"--is also implicated. Because this does not change our analysis, we will discuss S 1915(e)(2) generally and not parse its subsections further.

would be inequitable or futile. Shane, 213 F.3d at 116-17. The most natural reading of S 1915(e)(2) is no different. Both provisions employ the same language, borrowed from Rule 12(b)(6), to require that district courts shall dismiss complaints that fail to state a claim.

Defendants suggest that the words "shall dismiss" in S 1915(e)(2) should be read to require district courts to dismiss deficient complaints without granting leave to amend. We rejected an identical argument in Shane.

> We acknowledge that the words of the statute do not foreclose the following, more expansive reading: if a complaint fails to state a claim for any reason, including a pleading error that could be cured by amendment, the court "shall . . . dismiss" forthwith and without permitting a curative amendment. But we believe that this reading is more strained and would produce results that we doubt Congress wanted. If "shall . . . dismiss" were interpreted to mean "shall dismiss forthwith and without permitting a curative amendment," it would seem that a court would be required to grant a motion to dismiss a technically defective claim even if a request for leave to amend to cure the defect were pending. We doubt that Congress wanted to require such a harsh, and seemingly pointless, result. We are also hesitant to conclude that Congress meant to change established procedures without a clearer indication than we have here.

Id. at 117. We continue to subscribe to this reasoning. Neither the provision at issue in Shane, S 1997e(c)(1), nor the in forma pauperis provision applicable here, S 1915(e)(2), says anything about when to permit amendment. Thus, there is no reason to depart from our rule that plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile.

The great majority of other courts of appeals which have interpreted S 1915(e)(2) concur with our interpretation. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999); Perkins v. Kansas Dept. of Corrections, 165

11

F.3d 803, 806 (10th Cir. 1999). The Ninth Circuit noted, as we do, that S 1915(e)(2) "says only that a court 'shall dismiss' a complaint. It does not say that such a dismissal may be without leave to amend." Lopez, 203 F.3d at 1127. Similarly, both the Second and Tenth Circuits found that the "shall dismiss" language of S 1915(e)(2) did not modify district courts' responsibility to grant leave to amend. Gomez, 171 F.3d at 796; Perkins, 165 F.3d at 806.13 The Ninth and Tenth Circuits further observed that the statutory language of the three PLRA dismissal provisions mirrors that found in Rule 12(b)(6). Lopez, 203 F.3d at 1127; Perkins, 165 F.3d at 806. Thus, there is no reason that a district court should fail to retain its pre-existing authority under that rule to permit plaintiffs leave to amend.

The defendants urge us to adopt the position of the Sixth Circuit, see Benson v. O'Brian, 179 F.3d 1014, 1016 (6th

Cir. 1999); McGore v. Wrigglesworth, 114 F.3d 601, 612 (6th Cir. 1997), and the dissent in Lopez, see 203 F.3d at 1136 (Sneed, J., dissenting).14 We find these authorities unpersuasive. The Sixth Circuit reasoned that, because the PLRA authorizes sua sponte dismissals, it must also remove district courts' "discretion in permitting a plaintiff to amend a complaint to avoid a sua sponte dismissal." McGore, 114 F.3d at 612. But it failed to cite any authority explaining why sua sponte dismissals must be without leave to amend. Section 1915(e)(2) does not require dismissal to proceed so

---

13. Two additional courts of appeals have adopted our interpretation with respect to the PLRA's other dismissal provisions. See Davis v. Dist. of Columbia, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (holding that district court should have provided leave to replead before dismissing action under S 1915A, but that remand was unnecessary because amendment was futile); Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998) (holding that district court should have given plaintiff chance to amend before dismissing his claims under S 1997e(c), but that error was harmless because dismissal was without prejudice).

14. Contrary to the defendants' claim, the Eighth Circuit did not take this view in Christiansen v. Clarke, 147 F.3d 655, 658 (8th Cir. 1998), which addressed a prisoner's constitutional objections to S 1915(e)(2), not the issue of statutory interpretation presented here.

12

immediately that leave to amend is foreclosed, and we will not read such a harsh result into the statute.15

Nor do we find the Lopez dissent persuasive. 203 F.3d at 1136 (Sneed, J., dissenting). It relied on a statement in Neitzke v. Williams, 490 U.S. 319 (1989), characterizing S 1915(e)(2)'s predecessor, 28 U.S.C. S 1915(d) (1995). Section 1915(d) provided that a court "may dismiss [an in forma pauperis] case . . . if satisfied that the action is frivolous or malicious." Neitzke explained that complaints that fail to state a claim are not necessarily "frivolous," and that the term applies to "a more limited set of claims" than Rule 12(b)(6). 490 U.S. at 329. The Court proceeded to describe the interaction between Rule 12(b)(6) and S 1915(d).

> Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action. . . . By contrast, the sua sponte dismissals permitted by, and frequently employed under, S 1915(d), necessary though they may sometimes be to shield defendants from vexatious lawsuits, involve no such procedural protections.

Id. at 329-30 (emphasis added). The Lopez dissent insisted that, after Neitzke, Congress knew S 1915(d) afforded no

---

15. This is not to say the PLRA has no effect beyond what Rule 12(b)(6) already provides. We have held that district courts may dismiss complaints under Rule 12(b)(6) sua sponte where appropriate, but only after service of process. See Oatess v. Sobolevitch, 914 F.2d 428, 430 n.5 (3d Cir. 1990). The PLRA provides authority for dismissals without regard to whether the opposing party was served with process. Given the emphasis in the PLRA's legislative history on the cost to state and local governments of defending prisoner litigation, see 141 Cong. Rec. S14413 (1995) (statement of Senator Dole), we have no doubt that this distinction was meant to serve an important purpose.

13

procedural protections for frivolous complaints. Therefore, the dissent claimed, by enacting S 1915(e)(2)--which contains language similar to S 1915(d) but adds that the district court shall dismiss not only frivolous complaints, but also those that fail to state a claim or seek relief from a defendant immune from suit--Congress intended that in forma pauperis complaints inadequate under any of these standards be immediately dismissed without leave to amend. Lopez, 203 F.3d at 1138-39.

We are unconvinced by this argument because we believe it rests on an erroneous reading of both the oldS 1915(d) and its current manifestation, S 1915(e)(2). Neitzke did not describe S 1915(d) as involving "no such procedural protections," as the Lopez dissent and the defendants here would have us believe. Its language was more precise. It said "the sua sponte dismissals permitted by, and frequently employed under, S 1915(d) . . . involve no such procedural protections." Neitzke, 490 U.S. at 330 (emphasis added). Put differently, the Court stated two propositions: S 1915(d) permitted sua sponte dismissals, and those dismissals did not require leave to amend.16 The latter proposition is not based on the authority in S 1915(d). Instead, dismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend under Rule 15(a) when amendment is inequitable or futile. See Foman, 371 U.S. at 182; In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1434. Thus when Congress substituted S 1915(e)(2) for the old S 1915(d), thereby

---

16. The Lopez dissent further argues that the PLRA mandates immediate dismissal because former United States Senator Robert Dole once used the word "immediate" in describing the dismissal provisions. Lopez, 203 F.3d at 1141. The majority points out, however, that Senator Dole's full statement is that the "dismissal provisions would allow federal courts to immediately dismiss a complaint" that fails to state a claim. Lopez, 203 F.3d at 1130 n.11 (citing 141 Cong. Rec. S14408-01, *S14414 (1995) (emphasis added)). The Senator did not state that immediate dismissal was required in all cases, regardless whether the complaint could be amended to state a claim, and thus this passage does not support

defendants' reading of S 1915(e)(2). Moreover, in context it is apparent that Senator Dole is speaking of the screening provision, S 1915A, not the dismissal provision at issue in Shane, S 1997e(c)(1), or the one at issue here, S 1915(e)(2).

adding failure to state a claim and naming immune defendants as bases for dismissal, it did not mandate dismissal without leave to amend whenever those inadequacies arise.[17]

Nor is the defendants' reliance on the legislative history of the PLRA helpful to their interpretation of S 1915(e)(2). We note initially that there is no legislative history for the proposition that Congress wanted to deny plaintiffs the opportunity to amend technically inadequate but potentially meritorious complaints. Shane, 213 F.3d at 117 ("[W]e are not aware of any specific support in the legislative history for the proposition that Congress also wanted the courts to dismiss claims that may have substantive merit but were inartfully pled."). Indeed, the legislative history refutes the defendants' position. Senator Orrin Hatch stated that "I do not want to prevent inmates from raising legitimate claims. This legislation will not prevent those claims from being raised." 141 Cong. Rec. S14267 (1995). Were we to adopt the defendants' interpretation, however, we would require courts to reject an in forma pauperis claim without further process not because it lacks merit, but because the litigant could not afford counsel to draft it better. As we said in Shane, "[w]e doubt that Congress wanted to require such a harsh, and seemingly pointless, result." 213 F.3d at 117.

Moreover, Shane interpreted one of the PLRA's prisoner dismissal provisions, S 1997e(c)(1), but the defendants rely upon the in forma pauperis dismissal provisions, SS 1915(e) & 1915A, on which evidence of congressional intent is

---

17. The Ninth Circuit in Lopez would distinguish the Neitzke holding on the basis that S 1915(d) did not require dismissal, but only permitted it. "Neitzke did not state that courts were barred from granting leave to amend under [S] 1915(d), only that courts were not required to grant leave to amend." Lopez, 203 F.3d at 1128 n.8. This argument, however, loses its force in light of two ways that the PLRA changed S 1915(d)-- first, it added the "failure to state a claim" language and, second, it converted the "may dismiss" of S 1915(d) into "shall dismiss" in S 1915(e)(2). That second change, which made S 1915(e)(2) dismissals mandatory for deficient complaints, could be interpreted to require dismissal without leave to amend under S 1915(e)(2) if one accepts the dissent's initial proposition that S 1915(d) required dismissal without leave to amend.

sparse. While the legislative history is rife with pejorative commentary on overly litigious prisoners,[18] it makes only passing reference to the dismissal of in forma pauperis

complaints.19 The legislative history lacks any clear expression that Congress intended in forma pauperis plaintiffs, imprisoned and free alike, to be denied the opportunity to amend their complaints when that amendment would neither be inequitable nor futile.

Lastly, in seeking to distinguish the in forma pauperis dismissal provision from the provision at issue in Shane, the defendants cite legislative history discussing the need for economic disincentives to deter litigation by prisoners who do not pay filing fees.20 The defendants would have us believe that S 1915(e)(2)'s dismissal provision was intended to limit the flood of prisoner lawsuits, and that extending Shane to in forma pauperis complaints would defeat that purpose.

While Congress intended the PLRA as a whole to reduce prisoner litigation, S 1915(e)(2) was not necessarily meant to deter prisoners from filing lawsuits. That objective is promoted via a separate provision, S 1915(b), which "establishes an elaborate deferred payment schedule by which litigants may fulfill their filing fee obligations." Santana v. United States, 98 F.3d 752, 754 (3d Cir. 1996). Moreover, we doubt that requiring district courts to deny leave to amend would lead many prisoners to eschew

---

18. For example, Senator Dole stated that "[f]rivolous lawsuits filed by prisoners tie up the courts, waste valuable judicial resources, and affect the quality of justice enjoyed by the law-abiding population." 141 Cong. Rec. S14413 (1995).

19. Indeed, the Lopez majority concluded that there was no evidence in the legislative history that Congress intended to change the dismissal procedures for non-prisoner indigent plaintiffs, even though that group is clearly within the scope of S 1915(e)(2). See Lopez, 203 F.3d at 1129 n.10 (holding that the defendants' reading "would have harsh consequences on a group of plaintiffs -- indigent non-prisoners -- not even intended to be affected by the statute").

20. For instance, Senator Dole said, "As indigents, prisoners are generally not required to pay the fees that normally accompany the filing of a lawsuit. In other words, there is no economic disincentive to going to court." 141 Cong. Rec. S14413 (1995).

16

litigation. Prisoners are unlikely to consider post-filing legal disincentives in the same way they consider the economic disincentive created by the payment (albeit gradual) of filing fees. Furthermore, even if the defendants' speculation about prisoners' cost-benefit assessments is accurate, the resulting incentive would be to plead facts more specifically, not to refrain from suing. While this might conserve judicial resources, a goal of the PLRA, see 141 Cong. Rec. S14413 (1995) (statement of Senator Dole), it would not reduce the number of lawsuits.

IV.

Lacking any authority to the contrary either in statutory text or legislative history, we hold that S 1915(e)(2) did not alter our preexisting rule that in forma pauperis plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile. Because the District Court dismissed Grayson's complaint in contravention of this rule, we reverse and remand for proceedings consistent with this opinion.21

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

_____

21. Though we do not reach the question of whether the Magistrate Judge abused his discretion in failing to request counsel to represent Grayson under 28 U.S.C. S 1915(e)(1) and this Court's holding in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993), we note that the Court should reconsider its analysis of the Tabron factors following remand. Should Grayson submit an amended complaint that does not suffer from the same inadequacies of his initial one, both the threshold question of whether "the plaintiff 's claim [has] some merit in fact and law" and the six Tabron factors likely require reconsideration. See Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997).

17