GLD-098                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4144
_____

STEPHEN BRAZELTON,
                                        Appellant

v.

RONNIE R. HOLT, Warden; C.O. ORNER
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 4-10-cv-01223)
District Judge:  Honorable William W. Caldwell
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 26, 2012

Before: FUENTES, GREENAWAY, JR., and STAPLETON, Circuit Judges

(Opinion filed: February 9, 2012)
_____

OPINION
_____

PER CURIAM

        Stephen Brazelton, a federal inmate proceeding pro se and in forma pauperis,

appeals a District Court order that partly dismissed his complaint and partly granted

summary judgment in favor of the defendants.  For the following reasons, we will

1

summarily affirm.

The parties all agree that on June 17, 2009, Brazelton's hand was injured when it was caught in the hinges of his cell door. They differ, however, on the particulars on the incident. Defendant Corrections Officer Matthew Orner claims he was following standard procedures for the 4:00 P.M. "count" on the day in question, flicking the day-room lights to encourage inmates to return to their cells. See Orner Decl. ¶¶ 6–7, ECF No. 84-1. Upon beginning to close Brazelton's door, Orner heard him yell, and Brazelton told him that his hand was caught in the door's hinges. Orner Decl. ¶ 10; Orner Interrogatories Resp. 1, ECF No. 30-15. To Orner, the wound (a blood blister) did not look serious, and Brazelton informed him that he "did not need medical attention" and that it was his (Brazelton's) fault, Orner Decl. ¶¶ 10–12, 15; nevertheless, Orner called medical services and sent Brazelton to the infirmary after the 4:00 P.M. count was over. Orner Decl. ¶¶ 13–14; Orner Interrogatories Resp. 5. Medical staff observed mild swelling, and the hand was splinted; follow-up treatment revealed no lasting injuries. See Sullivan Decl. ¶ 4–11, ECF No. 84-1.

But as recounted by Brazelton, Orner, who arrived late to the shift, was "rushing" to lock inmates in their assigned cells. See, e.g., Compl. § D(3), ECF No. 1; Brazelton Dep. Tr. 39:3–9, ECF No. 84-2. In his haste, Orner made several errors, such as closing cell doors before checking to see whether inmates were present. Brazelton Dep. Tr. 41:4–9, 12–15. The eventual injury, far from being minor, "gashed" Brazelton's hand open; afterwards, Orner stood at Brazelton's cell door, apologizing and promising to

2

secure medical treatment.[1]  Brazelton Dep. Tr. 48:22–49:4.  Brazelton was finally seen by

medical around 7:00 P.M, and suffered injuries that were significant in scope.  See, e.g.,

Brazelton Dep. Tr. 53:16–17.

Shortly after the incident, Brazelton commenced pursuit of his administrative

remedies, citing (inter alia) Orner's "reckless disregard for [his] safety" and requesting

treatment and compensation.  Brazelton's final administrative appeal was denied on

March 11, 2010.  Brazelton separately filed an Administrative Tort Claim that was denied

on January 29, 2010.

Having exhausted the administrative process, Brazelton filed a civil-rights suit

pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403

U.S. 388 (1971), naming as defendants Orner and Warden Ronnie Holt.  Brazelton

claimed that "Orner, acting under the authority of . . . Holt, . . . did inflict harm, cruel and

unusual punishment . . . by slamming cell-door #220[] on [Brazelton's] fingers," causing

lasting injury.  Compl. § D(3).  The District Court read the complaint as also raising a

claim under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and proceeded

accordingly.  See Order n.2, ECF No. 6.

---

[1] Brazelton included numerous inmate affidavits to corroborate his version of the
encounter.  See ECF No. 30-6.  He also maintained that his injuries were far greater than
reported in the provided medical records, and accused the Bureau of Prisons of
engineering a cover-up by refusing to properly document the damage to his hand.  See,
e.g., Abraham Statement, ECF No. 30-6; Mot. for Summary Judgment 5, ECF No. 29
("Two of my fingers, my hand and wrist were damaged.  My fingers, wrist and hand were
bleeding."); Pl.'s Resp. 2, ECF No. 92 (charging the Bureau of Prisons with refusing "to
take photos of my hand on the day of injury.  My fingers were smashed flat.  I was
bleeding from three sites.").

3

We need not recount in detail much of what followed; suffice to say, the case quickly metamorphosed into a dispute over discovery in general and missing video recordings of the day in question in particular. Brazelton sought sanctions, arguing that the defendants were "stonewalling" him, committing fraud upon the court, purposefully destroying evidence, and exhibiting "100% disregard for the court['s] time, costs, and . . . limited resources." See generally Motion, ECF No. 29. Eventually, the defendants moved to dismiss and for summary judgment. The presiding Magistrate Judge recommended granting[2] the motion and denying Brazelton's request for sanctions, and the District Court (in large part) concurred. See Brazelton v. Holt, No. 4:10–CV–1223, 2011 WL 4553121, at *1, *2 n.3 (M.D. Pa. Sept. 29, 2011). This timely appeal followed.

We have jurisdiction under 28 U.S.C. § 1291 and conduct plenary review of summary judgment and dismissal decisions, including those implicating sovereign immunity. See United States v. Virgin Islands, 363 F.3d 276, 284 (3d Cir. 2004); Air Courier Conference/Int'l Comm. v. U.S. Postal Serv., 959 F.2d 1213, 1217 (3d Cir. 1992). With regard to dismissal, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in Brazelton's favor. Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam). Leave to amend a defective complaint should generally be granted to pro se plaintiffs when amendment would "neither be inequitable nor futile." Grayson v. Mayview State Hosp., 293 F.3d

---

[2] The Magistrate Judge observed that Brazelton had explicitly abandoned any Federal Tort Claims Act claim. See Pl.'s Reply Br. 8, ECF No. 88. He therefore recommended "dismissing" the defendants' summary judgment motion on that ground. Brazelton v. Holt, No. 4:10–1223, 2011 WL 4565776, at *12 (M.D. Pa. Aug. 4, 2011).

103, 114 (3d Cir. 2002). With regard to summary judgment, we employ the same standard used by the District Court, and will affirm its decision if there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law, again viewing the facts in the light most favorable to Brazelton.[3] Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000).

We may dispense quickly with the starker defects in this appeal. First, the District Court correctly dismissed the claims against the defendants in their official capacities as being barred by sovereign immunity. "[T]he federal government is generally immune from suit, except where Congress has expressly articulated an exception to the immunity." Scheafnocker v. Comm'r, 642 F.3d 428, 434 (3d Cir. 2011).[4] A Bivens suit "against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007). Second, it is clear from the record that Brazelton's claims against defendant Holt arose from the warden's conduct in the evidence-gathering phase and in the administrative-remedy process. See, e.g., Aff., ECF

---

[3] We do not address the propriety of the District Court's decision to deem the defendants' recitation of facts "admitted" due to Brazelton's noncompliance with its local rules. As we discuss below, the outcome is the same under either factual reading; as such, we will give Brazelton's retelling due weight for the purposes of this appeal.

[4] Of course, the Federal Tort Claims Act includes precisely such a (limited) waiver. See White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010). On this front, Brazelton's complaint was defective, as he did not name the United States as a defendant.

5

No. 30-6. Since "respondeat superior is not a viable theory of <u>Bivens</u> liability," <u>Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000), Brazelton did not state a claim against Holt by merely suggesting that he was Orner's supervisor or that he participated in the subsequent investigation. We agree, further, that amendment would be futile with regard to these deficiencies.

Turning, then, to the meat of the suit, we agree with the District Court that summary judgment was warranted. "To be cruel and unusual punishment [under the Eighth Amendment], conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety[;] . . . [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986); <u>see also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."). "[A]n accident or inadvertence or mere negligence does not [in itself] trigger the Eighth Amendment." <u>Grabowski v. Jackson Cnty. Pub. Defenders Office</u>, 47 F.3d 1386, 1395 n.12 (5th Cir. 1995) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 105–06 (1976)). Simply put, nowhere does Brazelton show that Orner was aware of and disregarded an excessive or substantial risk of harm to inmates due to his alleged haste. In Orner's retelling, Brazelton's injury was an unfortunate

---

See <u>Galvin v. Occupational Safety & Health Admin</u>., 860 F.2d 181, 183 (5th Cir. 1988). As we agree that the tort claims were abandoned, this defect is of no moment.

6

accident; in Brazelton's, it was an accident compounded by negligence and carelessness. But in neither scenario was Orner's conduct reflective of the heightened standard required to sustain an Eighth Amendment claim.

In light of the above, we conclude that the District Court did not abuse its discretion in declining to sanction the defendants. See Simmerman v. Corino, 27 F.3d 58, 61 (3d Cir. 1994). Even if videotaped evidence existed that could have supported Brazelton's version of the events, it would not suffice to elevate his claims above an Eighth Amendment threshold. See Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994) (holding that a "key consideration[]" in evaluating sanctions connected with the discovery process is whether a party was prejudiced by the missing evidence).

While we sympathize with Brazelton's situation, the Eighth Amendment simply does not provide relief for the conduct about which he complains. For the foregoing reasons, and as we find that this appeal presents no substantial issue, we will summarily affirm the judgment of the District Court. Murray v. Bledsoe, 650 F.3d 246, 248 (3d Cir. 2011) (per curiam); see also 3d Cir. L.A.R. 27.4; I.O.P. 10.6.