DLD-300                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1474
_____

GILBERT DOMINGUEZ,
                                    Appellant

v.

GOVERNOR OF PENNSYLVANIA;
SECRETARY PENNSYLVANIA DEPARTMENT
OF CORRECTIONS; FACILITY MANAGER LAWLER;
HCAC CAMPHILL MARY L. SHOWALTER; UNKNOWN DEFENDANTS
TO PLAINTIFF; KARPENSKI, LIAISON REPRESENTATIVE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-13-cv-02842)
District Judge:  Honorable Yvette Kane
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 3, 2014
Before:  SMITH, HARDIMAN and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 29, 2014)
_____

OPINION
_____

PER CURIAM

       Appellant Gilbert Dominguez, an inmate proceeding *pro se*, appeals the District

Court's dismissal of his complaint at screening.  <u>See</u> 28 U.S.C. § 1915 (e)(2)(B)(ii).

Because the appeal does not present a substantial question, we will summarily affirm the District Court's order. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

## I.

Dominguez filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983, alleging that the defendants were deliberately indifferent to his serious medical needs when they wrongfully transferred him out of state. He named as defendants the former governor of Pennsylvania and the former secretary of the Pennsylvania Department of Corrections, as well as three correctional administrators and unnamed Doe defendants.

Dominguez alleged that he should not have been transferred from the State Correctional Institution at Huntingdon, in Pennsylvania, to a facility in Michigan because his then-existing heart condition rendered him ineligible for the transfer. Once in Michigan, he received open-heart surgery. According to Dominguez, however, the state of Pennsylvania, which remained contractually responsible to Michigan for the costs of Dominguez's care, did not want to pay medical expenses related to an extended hospital stay and the Michigan facility was not equipped with a proper infirmary. Dominguez alleged that he was thus assigned to a prison cell only three days after his open-heart surgery. Dominguez claimed that, as a result, he contracted an infection that required him to return to the hospital for an unspecified period of time, with unspecified consequences to his health. Dominguez also alleged that his request to be transferred

2

back to Pennsylvania in order to receive proper medical care was wrongly denied. He eventually returned to the state with the return of all Pennsylvania inmates in 2011.

Adopting the Report and Recommendation of the Magistrate Judge ("the R&R"), the District Court dismissed Dominguez's claims with prejudice. It rejected the claims against the defendants in their official capacities on the basis of Eleventh Amendment immunity. As to the claims against the defendants in their individual capacities, the District Court held that Dominguez failed to state a viable claim. It denied Dominguez leave to amend. He timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we exercise plenary review over the District Court's dismissal of Dominguez's claims. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). In conducting our analysis, "we accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them, and we affirm the order of dismissal only if the pleading does not plausibly suggest an entitlement to relief." Fellner v. Tri-Union Seafoods, L.L.C., 539 F.3d 237, 242 (3d Cir. 2008). We may summarily affirm if the appeal does not present a substantial question. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir.2011) (per curiam).

3

## III.

The District Court properly dismissed this action. When sued in their official capacities, state-employed defendants receive the same immunities under the Eleventh Amendment as the state itself. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). And we concur with the District Court that, to the extent the defendants were sued in their individual capacities, Dominguez failed to specifically allege their personal involvement in the alleged wrongdoing. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Dominguez's complaint did not contain specific allegations showing that the defendants had any knowledge of wrongdoing, much less participated in the alleged violations. Dominguez asserted that the defendants acted with deliberate indifference when they transferred him to Michigan because he had a heart condition. It is not reasonable to infer from these allegations, however, that the named defendants knew that the facility in Michigan was somehow ill-equipped to treat his condition. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). To the contrary, Dominguez admitted that his medical condition was, in fact, treated and monitored while he was in Michigan. As a

4

result, we see no basis for an Eighth Amendment claim arising from his transfer to that state.[1]

Dominguez did, in conclusory terms, allege that the defendants were informed of his hospitalization and that they approved his discharge from the hospital. Those allegations, however, tend to indicate that, to the extent the defendants had any knowledge of Dominguez's circumstances once in Michigan, they were informed that he was receiving adequate medical care—namely, open-heart surgery.

With regard to his care after that surgery, Dominguez acknowledged that four of the five defendants were never told about the Michigan prison conditions by the fifth defendant, Karpenski, an administrator serving as liaison between the Michigan and Pennsylvania facilities. It is not reasonable to infer from those allegations that any defendant other than Karpenski knew about the alleged violations. And although the

---

[1] To the extent that Dominguez's complaint sought to challenge his transfer to Michigan as a violation of his due process rights, those claims also fail as a matter of law. Inmates have no constitutionally protected liberty interest in being housed at a particular facility. See Olim v. Wakinekona, 461 U.S. 238, 245–48 (1983). Moreover, even if Dominguez's transfer was in violation of a DOC policy providing that only inmates free of serious medical issues would be transferred, deviation from the policy would not, without more, constitute a violation of due process. See Griffin v. Vaughn, 112 F.3d 703, 709 n.3 (3d Cir. 1997) ("The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, or course, but in making that choice, the State does not create an independent substantive right.").

5

facts set forth in the complaint indicate that Karpenski had some involvement with Dominguez, the allegations as to Karpenski's participation are still too vague to state a claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008). This is because the only apparent direct involvement that Karpenski had with Dominguez was a letter from him to her requesting a return transfer. Karpenski denied the request, stating that she had checked with the medical department and they reported that Dominguez was stable and undergoing medical monitoring. An official's involvement based on such grievances alone generally does not amount to personal involvement. See Rode, 845 F.2d at 1208. Rather, to state a claim for the denial of medical care under the Eighth Amendment Dominguez must allege that an official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer, 511 U.S. at 837). Those allegations simply are not present here.[2]

Finally, in light of the admissions contained in the submissions to the District Court regarding the care that Dominguez received and the level of personal involvement

---

[2] Dominguez argued in his objections to the R&R that Karpenski had access to all of the information related to the Michigan facility's conditions of confinement and thus should have known that his post-operative care was inadequate. As noted by the District Court, allegations of access to information are different from allegations of actual knowledge and are insufficient to demonstrate the requisite level of personal involvement in the deprivation of a Constitutional right. See A.M. ex rel J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

of the defendants, the District Court did not abuse its discretion in determining that amendment would be futile.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 106 (3d Cir. 2002).

IV.

For the reasons stated above, we will summarily affirm the judgment of the District Court.  Dominguez's motion for the appointment of counsel is denied.