**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1491
_____

MICHAEL WIGGINS,
Appellant

v.

UNIVERSAL PROTECTION SERVICES LLC;
PATRICE O'ROURKE, Human Resources; MICHAEL BUECHLER, Account Manager;
BYHIRA AYERS, Security Officer; SHANE SMITH, Security Officer
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civil Action No. 2:20-cv-05617)
District Judge: Honorable Mitchell S. Goldberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 2, 2022
Before: KRAUSE, BIBAS, and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 9, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**PER CURIAM**

Pro se appellant Michael Wiggins appeals the District Court's dismissal of his claims against his former employer, Universal Protection Services LLC, d/b/a Allied Universal Security Services ("Allied Universal"). Wiggins brought claims of sex discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. For the reasons that follow, we will affirm the District Court's judgment.

I.

In 2019, Wiggins was working as a security guard at Crozer-Chester Medical Center ("Crozer") as an employee of Allied Universal. Wiggins established a friendly working relationship with a co-worker, Byhira Ayers, in April 2019. In June 2019, Wiggins was promoted to a part-time weekend supervisor position, where he would act as the officer in charge on certain weekend shifts; he was otherwise in the same position as Ayers for the rest of the week. He claims that his relationship with Ayers changed immediately after his promotion, when Ayers began a campaign to sabotage his employment.

On June 7, 2019, after Wiggins returned home from work, he returned a missed call from another co-worker. When his call went through, Ayers grabbed the phone from the other co-worker, put it on speakerphone, yelled at Wiggins for leaving her work to do, and said he "sound[ed] like a straight girl" in front of other co-workers. See Compl., Ex.

2

A at p. 1.

On June 15, 2019, Wiggins was working as the officer in charge. Ayers was off-duty but still at the worksite. After Wiggins gave instructions to several officers, Ayers said, "[y]ou ain't gotta listen to him" and asked where a full-time shift supervisor was. See Compl. at p. 5. Wiggins then told Ayers not to get into a security vehicle with him and three other officers, but she did anyway. Wiggins claims that when he returned to work the next morning, a group of security officers laughed at and mocked him; he does not identify what they said. As a result of these incidents, Wiggins filed a written complaint of harassment against Ayers with management.

On June 17, 2019, Ayers was removed from the Crozer account pending an investigation. The next day, Ayers was reinstated after she submitted allegations of sexual harassment against Wiggins to management. Ayers called Wiggins "a lying pervert." See id. at p. 7.

On June 19, 2019, Wiggins had a meeting with a manager about Ayers' complaint. The manager also discussed complaints against Wiggins by other women, including a co-worker who claimed that she experienced unwanted physical advances from Wiggins. After Wiggins allegedly said that he wanted Ayers "the fuck gone" upon hearing that she was reinstated, Wiggins was issued a final warning for unprofessional conduct and was suspended without pay while the issue was being investigated. See id. at p. 17. The stated reason for the warning was that Wiggins had engaged in "[u]nprofessional conduct

3

towards fellow security officers and inappropriate comments and statements to officers and supervisors." See id., Ex. D. Wiggins claims that he was not allowed to respond to Ayers' allegations and that he was forced to sign a reassignment form to be placed at another worksite.

On June 20, 2019, both Wiggins' and Ayers' complaints were turned over for further investigation by the human resources department. On July 3, 2019, Wiggins attended a formal meeting with two new investigators, who discussed his and Ayers' allegations. On July 12, 2019, the investigators told Wiggins that their investigation was inconclusive as to Ayers' complaint. Nonetheless, they upheld the final warning against Wiggins, which resulted in a loss of seniority and a demotion, and stated that Wiggins would be reassigned to another site while Ayers continued at Crozer. Wiggins alleges that Ayers did not have to attend such a meeting. Ultimately, based on Wiggins' complaint, Ayers was required to take a course on ethics and conduct.

In November 2020, Wiggins filed a federal complaint alleging claims of sex discrimination and retaliation under Title VII against Allied Universal, Ayers, Smith, and two members of management. Early on, the District Court granted Wiggins' motion to proceed in forma pauperis and simultaneously screened his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). It dismissed his claims against the individual defendants, noting that plaintiffs may bring Title VII discrimination and retaliation claims solely against their employers, and permitted his claims against Allied Universal to proceed.

4

Allied Universal then filed a motion to dismiss, which the District Court granted, dismissing Wiggins' complaint with prejudice. Wiggins timely appealed.[1]

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal of Wiggins' claims. See Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). In our review, "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (citation omitted). Dismissal is appropriate "if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility." Id. Additionally, we review the District Court's decision to deny Wiggins leave to amend his complaint for abuse of discretion. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

## III.

We agree with the District Court's dismissal of Wiggins' claims. First, Wiggins did not state a prima facie case of Title VII sex discrimination either under a disparate treatment or a hostile work environment theory. To state a prima facie case of disparate

---

[1] Wiggins does not dispute the dismissal of the individual defendants in his appellate brief. He also does not dispute the District Court's dismissal of what he framed as a standalone "constructive discharge" claim, which was not brought under any federal statute. Wiggins has thus forfeited any challenge to the resolution of these issues. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016).

5

treatment, an employee must set out four elements, the last of which is that he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination, such as where the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Wiggins has not alleged that his final warning, human relations investigation, and reassignment occurred under circumstances that could give rise to an inference of unlawful sex discrimination. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (per curiam) ("The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.") (internal quotation marks and citation omitted). Wiggins contends that he was treated differently than Ayers in each step of that process, identifying her as the only potential comparator in this case.

Wiggins argues that he and Ayers were similarly situated because they were both "security guards of equal position who levied dueling complaints of harassment against each other." See Appellant's Br. at p. 18. But Ayers was not in the same job position as Wiggins. According to his complaint, Wiggins had recently been promoted to a partial supervisory position, while Ayers was not. Further, although both Ayers and Wiggins

6

were subject to complaints of harassment, Wiggins faced harassment complaints from multiple individuals, and as well as potential discipline for "inappropriate comments and statements to officers and supervisors."[2]  See Compl., Ex. D.  Under these circumstances, Ayers cannot serve as a similarly situated comparator for Wiggins.  See Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002) (explaining that to be similarly situated, a comparator must be someone "directly comparable to [the plaintiff] in all material respects").  Accordingly, his disparate treatment claims were appropriately dismissed.

Next, Wiggins did not state a prima facie case for a hostile work environment claim, as he did not make factual allegations that could suggest that his workplace was "permeated with *discriminatory* intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."  See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted) (emphasis added).  Wiggins has alleged a single, isolated utterance of a sex-based remark — being told he "sound[ed] like a

---

[2]  We consider the documents attached to Wiggins' complaint in determining whether the District Court's dismissal was appropriate.  See Davis v. Wells Fargo, 824 F.3d 333, 341 (3d Cir. 2016) (explaining that in evaluating whether a Rule 12(b)(6) dismissal was appropriate, we may examine "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents") (citation omitted).

straight girl."[3]  See Compl., Ex. A at p. 1.  Otherwise, he alleges being subjected to general hostility by co-workers in his workplace, but his claim does not allege sex-based discriminatory intimidation, ridicule, or insult.  See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal quotation marks and citation omitted). Accordingly, Wiggins' hostile work environment claim was properly dismissed.

Finally, Wiggins has not alleged a prima facie case of discriminatory retaliation. A plaintiff must allege three elements to bring a claim of Title VII retaliation, the first of which is that he "engaged in activity protected by Title VII."  See Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted).  Protected opposition activity includes "informal protests of discriminatory employment practices, including making complaints to management."  See id. at 343 (internal quotation marks and citation omitted).

Here, Wiggins made formal, written complaints to management about how he was being treated, which he attached to his federal complaint.  Notably absent from his complaints is any mention of concerns regarding sex-based discrimination.  His complaint expressed frustration at disrespectful behavior by his co-workers, including

---

[3]  Wiggins has not explained how being called "a lying pervert" on another occasion is a sex-specific remark, and we discern no basis to conclude or infer that it is.  See Compl., at p. 7.

8

"some younger female security officers," see Compl., Ex. A at p. 4, but it contained no indication that he intended to highlight a discriminatory employment practice at his worksite rather than (or in addition to) a general issue of disrespect. See Barber v. CSX Distribution Servs., 68 F.3d 694, 701 (3d Cir. 1995) (explaining that a general "complain[t] about unfair treatment" does not constitute protected activity for purposes of a claim of discriminatory retaliation). Accordingly, because Wiggins has not alleged that he engaged in protected activity, he cannot state a claim of Title VII retaliation.

When a plaintiff's claims are dismissed, leave to amend should be freely given "unless amendment would be unequitable or futile." Grayson, 293 F.3d at 108. In this case, we agree with the District Court that granting Wiggins leave to amend would have been futile. He included all the relevant documents underlying his claims with his complaint and has not argued that he could offer additional factual allegations to overcome the hurdles to relief discussed above, either in the District Court or in his appellate filings. If Wiggins "had knowledge of facts that would cure the defects in [his] complaint, [he] should have asserted them before now." See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 253 (3d Cir. 2007). Thus, the District Court did not abuse its discretion in denying Wiggins leave to amend his complaint.

For these reasons, we will affirm the judgment of the District Court.

9