In re James A. **MEYER** and Mary
E. Meyer, Debtors.

James A. Meyer and Mary
E. Meyer, Plaintiffs,

v.

Argent Mortgage Company, LLC Countrywide Home Loans, Inc. Integrated Financial Group, Inc., Defendants.

Bankruptcy No. 06–13841 SR.
Adversary No. 07–0031.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 29, 2007.

David A. Scholl, Esquire, Regional Bankruptcy Center of Southeastern Pennsylvania, Newtown Square, PA, for Plaintiff.

Martin C. Bryce, Jr., Esquire, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Countrywide Home Loans, Inc.

Sandya Mathur Feltes, Esquire, Kaplin Stewart, Blue Bell, PA, for Argent Mortgage Company LLC.

Brandon Wind, Esquire, Newtown, PA, for Integrated Financial Group, Inc.

### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

*Introduction*

Before the Court are three matters: Plaintiffs' Motion for Permission to Amend Complaint and Motions for Summary Judgment filed by Defendants Countrywide Home Loans, Inc. (Countrywide) and Argent Mortgage Company LLC (Argent). All of the motions are opposed. After hearings held on August 28 and September 20, 2007, the Court took the matters under advisement.

*Summary of Holding*

The Motion for Permission to Amend will granted in part and denied in part. Plaintiffs will be permitted to amend the complaint as proposed with the exception of two items: Plaintiffs may not add Deutsche Bank (Deutsche) as a defendant and neither may they base their TILA claim on a second settlement statement only recently produced. All other changes will be allowed to the extent that they either drop parties or eliminate claims.

Like the request to amend, the Motions for Summary Judgment will be granted only in part. The TILA claim against Argent for failure to disclose the right to rescind is supported by probative evidence; however, any claim for monetary damages resulting from the violation is time-barred. Equally, any right to rescind based on that same violation has expired. However, the TILA claim against Countrywide for its failure to respond to the request that it name the holder of the loan is both timely and substantiated. Finally, the UDAP claim against Argent remains viable because although it derives from Argent's failure to disclose under TILA, the UDAP limitations period has not yet run out.[1]

*Procedural Background*

Plaintiffs filed suit against Countrywide, Argent, and Integrated Financial Group, Inc. (Integrated) The Complaint alleges violations of federal and state consumer lending law arising out of a mortgage loan. Countrywide and Argent filed motions for summary judgment. While those motions were pending, the Plaintiffs sought leave to amend the complaint. The Court will address first the request to amend. That will determine to what extent the summary judgment motions are moot.

*Applicable Rule of Procedure*

▮▮▮ Amendment of pleadings is governed by Fed.R.Civ.P. 15 which is made

---

1. Because the Complaint seeks to avoid a secured interest in the Debtor's property (i.e., rescission of the mortgage loan, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K)). That subparagraph includes among core proceedings "determinations of the validity, extent, or priority of liens."

applicable by Fed. R.Bankr.P. 7015. The rule provides, in pertinent part:

> (a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. *Otherwise a party may amend the party's pleading only by leave of court* or by written consent of the adverse party; and *leave shall be freely given when justice so requires.*

Fed.R.Civ.P. 15(a) (emphasis added). The Supreme Court has made it clear that the application of this presumption is "a mandate to be heeded." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It furthers the policy of trying cases on their merits. *Id.* It also avoids the possibility of the opposing party suffering prejudice or surprise. 6 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1474.

 The precise delineation of when leave should be granted or denied is impossible; therefore, the determination is left to the sound discretion of the trial judge. *Newark Branch, NAACP v. Town of Harrison,* 907 F.2d 1408, 1417(3d Cir. 1990). This requires the Court to consider the position of *both* parties and the effect that the request will have on them. Wright, Miller, supra at § 1487 (emphasis

added). For that reason, the court may deny a request to amend when the moving party has demonstrated undue delay, bad faith or dilatory motive or where the amendment would prejudice the opposing party. *See Foman, supra, id.; Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002) Equally, an amendment will be denied where it is futile. *Id.*

## How the Plaintiffs Propose to Amend the Complaint

The proposed pleading would amend both the parties as well as the claims. As to the parties, the amendment would add Deutsche Bank (Deutsche) as a defendant. As to claims, the amendment would begin by adding a number of factual allegations. The new facts would pertain to Count I (TILA[2]) and Count IV (UDAP[3]). Count II (the RESPA[4] claim) would be eliminated. Count III (the CSA/LBTPR[5] claims) would now become Count II and would be leveled solely at Integrated.[6] Count IV (UDAP) would now become Count III and would be limited to Integrated and Argent. *See* Proposed Amended Complaint; *see also* Motion for Permission to Amend, ¶ 4; *see also* Proposed Amended Complaint attached as Ex. A to Motion; Transcript of Hearing (Trans.) 9/20/07 @ 5–6. What positions do the Defendants take as to the proposed amendment?

## The Extent of Opposition to the Motion for Leave to Amend

At the outset, the Court observes that the Defendants oppose the amendment to

---

2. Truth in Lending Act, 15 U.S.C. § 1601 et seq.

3. Uniform Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 et seq. The Court will employ the shorter acronym since it is generically a law regulating unfair or deceptive acts or practices, is referred to hereinafter as ("UDAP").

4. Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.

5. Credit Services Act, 73 P.S. § 2181 et seq., and Loan Brokers Trade Practices regulation, 37 Pa.Code § 305.1 et seq.

6. It formerly named all of the defendants. *See* Complaint.

limited degrees. For its part, Countrywide objects only to the addition of Deutsche as a defendant; its objection goes no further than that. Even less may be said for Argent: it did not file a response to the motion. *See* Docket; *see also* Trans. 9/20/07 @ 12. Both were content to address the issue of the second HUD–1 in their oral argument on summary judgment. What is the procedural effect of all this?

 Merely because a party does not respond to a motion does not mean that it must be granted. The notice which accompanied Plaintiffs' motion followed the local form. It informed the Defendants that if they failed to file a written response, then the Court *may* grant the relief requested. *See* L.B.R. 9014–3. The term "may" is important here; as a matter of statutory construction, it connotes discretion on the Court's part. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136, 126 S.Ct. 704, 709, 163 L.Ed.2d 547 (2005). In other words, a defendant's failure to have filed a response to a motion does not require that it be entered. The Court must first analyze the circumstances to see if the request should be summarily granted.

Argent's failure to have filed a response may be due to the somewhat fluid nature of the pretrial proceedings. When Plaintiffs filed their motion to amend on August 13, Argent had already settled with them. *See* Docket # 46, 47 However, just days before the hearing on Countrywide's summary judgment motion, that settlement fell through. *See* Trans. 8/28/07 @ 1. That left only 3 days for Argent to file a *timely* response to the motion to amend (August 31), so if Argent had requested more time to consider the amendment, then the Court would have surely granted it. Instead, Argent requested that its summary judgment be placed back on the Court's hearing calendar. It appears then that Argent either forgot about the amendment or considered its oral argument to be responsive to that request. Regardless of what Argent may have been thinking, its motion would be affected by the amendment. Therefore, it would be unfair to grant the motion to amend based on a technical default on Argent's part. Justice requires that the Court at least consider Argent's oral arguments as responsive to Plaintiffs' motion to amend. The Court turns now to the amendments.

### Adding Deutsche as a Defendant

The Court begins with the request to name a new defendant. Adding Deutsche is the principal reason why Plaintiffs seek leave to amend. Trans. 9/20/07 @ 5. Countrywide objects to that change on the grounds of delay, prejudice as well as futility. According to Countrywide, Plaintiffs would have learned in discovery that Deutsche held the note if they had undertaken any. They did not. Allowing this amendment now, they conclude, would require reopening of discovery. Aside from delay, Countrywide maintains that it would be otherwise futile to add Deutsche because the claims against it are barred by a statute of repose.

### Delay and Prejudice

Countrywide contends that Plaintiffs failed to undertake the thorough discovery which would have informed them of Deutsche's interest in the loan. They explained that they denied in their Answer to the Complaint that they owned the loan. *See* Countrywide's Brief in Opposition to Motion to Amend, 4. This response, Countrywide explains, should have prompted Plaintiffs to undertake discovery to find out who owned the loan. *Id.* For whatever reason, they did not. Four months later, Countrywide filed its motion for summary judgment. In it, they identified Deutsche as the holder. *See* Countrywide's Brief in

Support of Motion for Summary Judgment, 7. That was when Plaintiffs first moved to amend to add Deutsche. Does that constitute undue delay?

The Court finds that there is unmistakable delay on Plaintiffs' part here. However, such delay is not undue under the circumstances. To be sure, minimal discovery would have unearthed Deutsche interest in the loan, but the issue of who the holder was came up before suit was filed. The record reflects that on January 2, Plaintiffs' counsel wrote both Countrywide and Argent. That letter confessed to Plaintiffs' uncertainty as to who owned their loan. So for that very reason, the letter formally requested—in accordance with TILA § 1641(f)(2) *and in the opening paragraph*—that Countrywide either identify the holder or give them the name of someone who could. Countrywide never answered that request. Yet for whatever reason, Plaintiffs' counsel never pursued its rights in this regard. To be sure, that was a failing on the part of Plaintiffs' counsel. But it was Countrywide's knowing evasion of its duty to provide that information which has led in part to the resulting delay. The Court finds Countrywide hard put to claim prejudice under these circumstances.

■ Moreover, the Court cannot help wondering why Countrywide vociferously opposes an amendment which pertains to a different defendant. Assuming leave is granted to add *Deutsche,* how is *Countrywide* harmed by this? "The 'prejudice' to which the rule refers is that suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale." *Curry v. Johns–Manville Corp.,* 93 F.R.D. 623, 626 (E.D.Pa.1982). What case prepa-

ration must Countrywide now undertake if the Plaintiffs' rescission claim is now directed at Deutsche? For that matter, on what basis does Countrywide have standing to press this objection? Having assigned its interest in the loan, it is not the real party in interest under F.R.C.P. 17.[7] *See Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings,* 198 F.3d 415, 425 (3d Cir.1999) (holding that assignor of loan lacked standing to sue under it). In sum, the Court finds neither prejudice nor undue delay attending this amendment.

*Futility*

■ Alternatively, Countrywide claims that adding Deutsche would be an act of futility. An amendment is futile if it would not survive a motion to dismiss for failure to state a claim upon which relief could be granted. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997)(*citing Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir.1996)). In determining whether the amendment would be futile, the district court applies the same standard of legal sufficiency as under Fed.R.Civ.P. 12(b)(6). *See id.* "In considering whether the complaint survives a motion to dismiss, we review whether it contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Montville Tp. v. Woodmont Builders, LLC,* 2007 WL 2261567 *2 (3d Cir.) (citing *Bell Atl. Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007)). Countrywide argues that the rescission claim is futile because it is untimely. *See* Countrywide Brief opposing amendment, 5–9. Indeed, the Third Circuit has held that if a statute of limitations "bar is *not* apparent on the face of the complaint, then it may not afford the basis

---

7. Made applicable by B.R. 7017.

for a dismissal of the complaint under Rule 12(b)(6)." *Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978); *Rycoline Products, Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir.1997). As to Deutsche, would the rescission demand be time-barred?

■ Plaintiffs' say no arguing that their amendment would relate back in time to the original filing. Although they do not expressly cite it, Plaintiffs are relying here on Rule 15's relation back provision. *See* F.R.C.P. 15(c). That provision allows an amendment to add a party if, among other conditions, that party knew of the claim and knew that it had been omitted from original process by mistake. *See* F.R.C.P. 15(c)(1)(C) Plaintiffs maintain that they made their rescission request upon Countrywide, who acted in the capacity of an agent for Deutsche, the principal. *See* Trans. 9/20/07 @ 9. Cited in their summary judgment response is Third Circuit case law to the effect that an agent's knowledge of a fact is imputed to its principal. Plain tiffs' Brief, 10. Elsewhere, they speak of Deutsche having "notice" of the rescission claim. Trans. 9/20/07 @ 12. It is safe to infer from all of this that Rule 15 is the procedural predicate for this part of the motion.

For its part, Countrywide asserts that neither common law agency principles nor federal rules of procedure apply here. They argue that this cause of action is subject to a statute of repose. As such, it is extinguished if not timely brought. They rely on Supreme Court authority for the proposition that the TILA rescission right is subject to a statute of repose. *See Beach v. Ocwen Federal Bank,* 523 U.S. 410, 419, 118 S.Ct. 1408, 1413, 140 L.Ed.2d 566 (1998) The result of that is to deprive the court of subject matter jurisdiction. Is Countrywide correct?

*Statutes of Repose*

■ The Plaintiffs' do not dispute that their rescission right is subject to repose. The Third Circuit has explained the difference between statutes of limitations and repose:

> In general, a statute of repose acts to define temporally the right to initiate suit against a defendant after a legislatively determined time period. Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit. "[S]tatutes of limitations bear on the availability of remedies and, as such, are subject to equitable defenses ..., the various forms of tolling, and the potential application of the discovery rule." In contrast, statutes of repose affect the availability of the underlying right: That right is no longer available on the expiration of the specified period of time. In theory, at least, the legislative bar to subsequent action is absolute, subject to legislatively created exceptions ... set forth in the statute of repose.

*Lieberman v. Cambridge Partners, LLC,* 432 F.3d 482, 490 (3d Cir.2006) quoting *P. Stolz Family Partnership L.P. v. Daum,* 355 F.3d 92, 102 (2d Cir.2004). Statutes of repose set forth nonwaivable jurisdictional bars to an untimely proceeding. *See In re Schwemmer Hardware Co., Inc.,* 103 B.R. 635, 641 (Bankr.E.D.Pa.1989). When there are jurisdictional limits to claims, equitable tolling or estoppel simply are not available. *Shendock v. Director, Office of Workers' Compensation Programs,* 893 F.2d 1458, 1466 (3d Cir.1990). This rule applies notwithstanding that the result may be "harsh." *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 318, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988).

*Subject Matter Jurisdiction and Rules of Procedure*

 Plaintiffs do not dispute the jurisdictional nature of the statute. Instead, they believe they can circumvent it through a procedural mechanism: they would amend the complaint pursuant to Rule 15 and have the amendment relate back for timeliness purposes. Countrywide maintains that this would not cure the jurisdictional defect here. Both the United States Code and the Rules of Civil Procedure provide that the rules cannot be used to alter jurisdiction. *See, e.g.,* 28 U.S.C. § 2072(b) (stating that the rules civil procedure shall not abridge, enlarge or modify any substantive right); *see also* F.R.C.P. 82 ("The Federal Rules of Civil Procedure shall not be construed to extend or limit the jurisdiction of the United States district courts.") In determining whether a rule impacts jurisdiction, a court must look to whether the rule in question has a "distinctly facilitative, 'procedural' cast dealing with case processing." *Henderson v. United States,* 517 U.S. 654, 667, 116 S.Ct. 1638, 1646, 134 L.Ed.2d 880 (1996). On the other hand, where the rule would affect a substantial federal right, then the rule would impermissibly tread upon the court's competence. *Id.,* 517 U.S. at 671–72, 116 S.Ct. at 1647–48. Here, the application of Rule 15(c)'s relation back provision to add a defendant would resurrect jurisdiction over an extinguished claim. In the context of federal appeals, the Third Circuit has denied leave to substitute an unnamed party in a notice of appeal after expiration of the appeal period. *See Kowaleski v. Director, Office of Workers' Compensation Programs,* 879 F.2d 1173, 1177 (3d Cir.1989). Like TILA § 1635(f), the applicable period for filing an appeal in that case was held to be jurisdictional. Just so, this Court lacks subject matter jurisdiction over Deutsche now that the three year rescission period has expired. Accordingly, to the extent that the amendment seeks to add Deutsche as a defendant, leave will be denied. *See Miguel v. Country Funding Corp. (In re Miguel),* 309 F.3d 1161, 1165 (9th Cir.2002) (holding that § 1635(f) is jurisdictional and may not be circumvented via common law agency principles or federal rule of procedure allowing amendment of pleadings); *accord In re Community Bank of Northern Virginia Second Mortgage Litig.,* 467 F.Supp.2d 466, 481–82 (W.D.Pa.2006). The Court turns now to the changes proposed to the causes of action.

*Amendment to the TILA Claim*

As originally pleaded, the TILA claim stated *two* violations: first, that Plaintiffs were given insufficient notice of their right to cancel; and second, that they were charged a number of closing costs which should have been disclosed as finance charges but were not. *See* Complaint, ¶¶ 6, 7. The amendment would change this count as follows: first, Plaintiffs now contend that they were given another settlement sheet (i.e., another HUD–1) at closing which is inconsistent with the first. *See* Proposed Amended Complaint, ¶ 6.[8] Second, Plaintiffs now limit the claim that various fees should have been disclosed as finance charges to just one charge: the yield spread premium. *Id.* ¶ 7.[9] To summarize, the amendment alleges *three* types of TILA violations where there were *formerly two:* (1) by failing to disclose the yield spread premium as a finance charge,

---

8. Like the notices to cancel, the second HUD–1 violates TILA by being misleading. *Id.* ¶ 16.

9. Former ¶ 7 maintained that certain title fees and notary charges should have been included in the finance charge.

(2) by failing to disclose Plaintiffs' right to cancel, and (3) by misleading them with two contradictory settlement statements. As only the third allegation raises new matter, the Court will examine to what extent that change should be permitted.

*Production of the Second Settlement Statement*

■ The amendment adds as another TILA violation the existence of a second HUD–1 statement.[10] That document is not referenced in the original complaint. All that is said there is that "these and possibly other violations of the TILA exist in their loan papers." *See* Complaint, ¶ 14. If there were, Argent explains, then they should have been disclosed in discovery. Argent contends that the second HUD–1 was not. Trans. 9/20/07 @ 18. For their part, Plaintiffs never dispute this. Moreover, they fail to illuminate as to why they raise it only now. All that their counsel said in that regard is that the amendment would serve to

> ma[ke] clear that we were concerned because Mr. Meyer had received two different settlement sheets, which were different, on the day of the settlement. And we believe that created certain confusion to Mr. Meyer.

Trans. 9/20/07 @ 7. This may be so, but it does not explain the delay in producing that document after the close of discovery. *See Tarkett v. Congoleum Corp.,* 144 F.R.D. 289, 290 (E.D.Pa.1992) (placing the burden of proof on any delay in seeking amendment on party moving to amend). It would be unfair to allow Plaintiffs to spring this new item of evidence upon Defendants at this late date. For that reason, the Court will deny leave to amend the complaint to add allegations regarding the alleged second HUD–1 Settlement Sheet.

*Amendment to the UDAP Count*

■ The Court turns next to the UDAP claim. This claim is now limited to Argent, the lender, and Integrated, the mortgage broker. Changes to this claim are reflected both *within* the specific count as well as *elsewhere* in the amendment. What is new *in* that count is a prepositional phrase of about twenty words. It serves to add some heightened factual specificity as to how it is that the Defendants violated this statute. Formerly, it was that they "collaborated" to violate UDAP. *See* Complaint, ¶ 25. According to the amendment, this "collaborat[ion]" occurred "by the exchange of consideration between them, which affected the terms of the loan in manners not disclosed to the Plaintiffs." *See* Amended Complaint, ¶ 25. This appears to be an oblique reference to the yield spread premium. Outside the count, it is now alleged that Argent deceived the Plaintiffs in having them pay that fee. The Plaintiffs were interested in obtaining the lowest possible rate of interest but did not receive that. *See* Proposed Amended Complaint, ¶ 7. Reading these changes together, the Court understands Plaintiffs to be arguing that by paying the broker a yield spread premium, Argent is guilty of deceit as well as non-disclosure. The effect of this is to make Argent liable for charging the yield spread premium under *two* theories: under TILA for the failure to disclose it as a finance charge and under UDAP for deceiving the Plaintiffs into believing that they were receiving the lowest possible interest rate. Should this change be allowed at this juncture of the proceedings?

The Court observes that this part of the amendment offers no new facts or other

---

10. It was referenced specifically in Plaintiffs' January 2 letter but thereafter it seems to have been forgotten. *See* Letter attached as Ex. "D" to Complaint.

matter. In other words, Plaintiffs are using the same facts for a second theory: that Integrated and Argent violated UDAP by deceiving Plaintiffs' regarding the real rate of interest which they would be paying. This should not come as a surprise to Argent: the UDAP count in the original complaint was also directed at it and is similarly premised on deceit. In essence, this is basically the same claim merely restated. So for that reason, the Court does not perceive any unfairness in allowing this change.

*Summary of Ruling on Motion to Amend*

The Plaintiffs will not be permitted to add Deutsche as a defendant because that claim would be futile. However, leave will be granted to the limited extent of re-phrasing the TILA claim (Count I) with regard to the yield spread premium. Leave will not be granted to reference a second HUD–1 settlement sheet which Plaintiffs have produced only now without any explanation why. The UDAP claim (Count III) will also be allowed as proposed. All of the remaining changes proposed in the motion will be allowed as they serve to either eliminate claims or drop defendants from particular counts. Given the minimal scope of the allowed changes to the Complaint, the Court will conform the pleadings to the record and treat the amended complaint as the original complaint. *See* 3 *Moore's Federal Practice, Civil* § 15.18[1] (explaining that some courts find implied consent to have issue decided on summary judgment when issue has been litigated without objection during discovery and other pretrial proceedings.) That seems to be the most efficient way to proceed while respecting the right of the litigants. The Court now turns its attention to the two motions for summary judgment.

*Motions for Summary Judgment*

Both Argent and Countrywide had motions for summary judgments pending when Plaintiffs sought to amend the complaint. The end result of allowing the amendment to the extent it did is to charge Argent with having violated both TILA and UDAP while Countrywide is charged with violating only TILA. Their respective motions then will be considered to the extent they address those surviving claims.

Argent, the original lender in this transaction, makes a number of points. As to the TILA claim, it argues that the count is both insufficient and time-barred. As to UDAP, Argent insists that it is neither derivatively liable for having violated *other* consumer lending laws nor is it independently liable under that statute. For its part, Countrywide incorporates the arguments of Argent regarding TILA and adds some of its own. It contends that any rescission claim is permanently barred by a statute of repose; that it cannot be liable because it was the servicer of the loan; and that, if it were found to have owned the loan at some point, then it did so as a good faith purchaser. The Court will first test the viability of the TILA claim. It is that claim which alleges both an independent basis of liability as well as a derivative claim under state consumer lending laws.

*TILA—The Yield Spread Premium*

 The first alleged TILA violation involves the alleged non-disclosure of the additional fee paid to the mortgage broker. Plaintiffs allege that the lender-paid broker's commission—known in the industry as a "yield spread premium"—should have been separately disclosed as a finance charge. *See* Amended Complaint ¶ 7, 15. Both the applicable statute and regulation define "finance charge" to include *certain* broker's fees:

(6) Borrower-paid mortgage broker fees, including fees paid directly to the broker or the lender (for delivery to the broker) whether such fees are paid in cash or financed.

*and*

(a)(3) Special rule; *mortgage broker fees.* Fees charged by a mortgage broker (including fees paid by the consumer directly to the broker or to the creditor for delivery to the broker) *are finance charges* even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge.

15 U.S.C. § 1605(a)(6); 12 C.F.R. § 226.4(a)(3). In this case, however, the broker fee is alleged to be a "yield spread premium." *See* Amended Complaint, ¶ 7. A recent District Court opinion defines a "yield spread premium" as:

a bonus paid to a broker when it originates a loan at an interest rate higher than the minimum interest rate approved by the lender for a particular loan. The lender then rewards the broker by paying it a percentage of the "yield spread" (i.e., the difference between the interest rate specified by the lender and the actual interest rate set by the broker at the time of origination) multiplied by the amount of the loan.

*Oscar v. Bank One, N.A.* 2006 WL 401853 *5 (E.D.Pa.) *citing In re Bell,* 309 B.R. 139, 153 n. 9 (Bankr.E.D.Pa.2004) (citing *Noel v. Fleet Finance, Inc.,* 971 F.Supp. 1102, 1106–07 (E.D.Mich.1997)). In this District, a yield spread premium is not required to be separately disclosed as a finance charge because it is already part of the interest component. Interest on a loan is required to be separately disclosed. *See Strang v. Wells Fargo Bank, N.A.* 2005 WL 1655886 *5 (E.D.Pa.); *Oscar, supra; Stump v. WMC Mortgage Corp.,* 2005 WL 645238 *4 (E.D.Pa.); *Escher v.*

*Decision One Mortgage Corp. (In re Escher),* 369 B.R. 862, 873 (Bankr.E.D.Pa.2007); *see also* 61 F.R. 26126, 26127, 2005 WL 645238 (1996) (reporting Federal Reserve Board's conclusion that yield spread premium should not be disclosed as a pre-paid finance charge pursuant to 15 U.S.C. § 1605(a)(6) because it is already included in the interest rate: "Fees paid by the funding party to a broker as a 'yield spread premium,' that are already included in the finance charge, either as interest or as points, should not be double counted."); *see also* Official Staff Interpretation to Regulation Z, 12 C.F.R. § 226, Supp. I, ¶ 4(a)(3)3 ("Compensation paid by a creditor to a mortgage broker under an agreement is not included as a separate component of a consumer's total finance charge (although this compensation may be reflected in the finance charge if it comes from amounts paid by the consumer to the creditor that are finance charges, such as points and interest)")

█ Equally unpersuasive is the Plaintiffs' argument that the higher interest rate was not disclosed to them. That is simply an incorrect statement: the yield spread premium is a component of interest due on the note. Interest is disclosed as part of the finance charge which is set forth in the TILA Disclosure Statement. *See* Complaint Ex. A; *see also* Mortgage Loan Origination Agreement attached as Ex. A to Argent's Brief (§ 2 explaining effect of yield spread premium on interest rate). Although the yield spread premium serves to increase the rate of interest, a lender is not required to break down the components of the finance charge to disclose the separate existence of the yield spread premium as a component of the finance charge. *See Escher, supra* at 873 On this record, then, the Court can conclude only that the yield spread premium

was sufficiently disclosed. There is then no TILA violation on that basis.

*TILA—Notice of Right to Cancel*

The Court turns next to Plaintiffs' second alleged TILA violation. They contend that their right to cancel the loan was not sufficiently disclosed to them. Here, they allege a two-fold failure: that they did not receive the requisite *number* of notices and that the notice that they did received was *incomplete*. TILA § 1635 provides, in pertinent part:

(a) Disclosure of obligor's right to rescind

Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. *The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the*

*obligor to exercise his right to rescind any transaction subject to this section.*

15 U.S.C. § 1635(a) (emphasis added).

*TILA—Receipt of the Required Number of Notices*

■■■ The applicable regulation (Regulation Z) provides that "[i]n any transaction or occurrence subject to rescission, a *creditor shall deliver two copies* of the notice of the right to rescind *to each consumer* entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b))." 12 C.F.R. 226.15(b). Plaintiffs contend that they received only two such notices when they should have received four. According to the Defendants, the Plaintiffs received the required number of notices and acknowledged that fact in writing. Countrywide correctly points out that it is the lender's burden of persuasion to show that it has complied with the TILA disclosure request after a borrower makes a threshold showing of non-compliance. *See In re Cobb*, 122 B.R. 22, 26 (Bankr.E.D.Pa.1990). TILA § 1635 provides that a written acknowledgment of receipt of any disclosures required under TILA creates a rebuttable presumption of delivery. *See* 15 U.S.C. § 1635(c). The burden thus shifts to the borrower to prove non-receipt by testimony of the debtor that the disclosures were not given. *Williams v. Gelt Financial Corp.*, 237 B.R. 590, 594 (E.D.Pa.1999). What does the record show in that regard?

■■■ Here, the Defendants rely on what is acknowledged in their copy of the Notice of Right to Cancel. *See* Countrywide's Brief, Ex. E; Argent's Brief, Ex. G. That notice states that the borrowers acknowledge—each of them—receipt of two copies of the notice of their right to cancel. Signature lines for both Plaintiffs appears under that language and both lines appear

to have been signed. Importantly, both spouses admit that what appears on that notice appears to be their signatures. *See* to Countrywide Brief, Ex. C, Deposition of J. Meyer, p. 43; Ex. D, Deposition of M. Meyer, p. 10. Moreover, neither recall whether they received the notices. *See* J. Meyer Dep. pp. 42–44; M. Meyer Dep. P. 10. That shifts the burden to the Plaintiffs to prove non-receipt.

While Plaintiffs will not be put in a position here of having to prove a negative, they must provide some explanation of how it is that they simply didn't receive all four notices. Mr. Meyer explains it as follows: while neither he nor his wife could exactly remember what papers they signed or what they looked like or how many there were, he is certain that he kept all of those papers together and intact and gave them to his lawyer. *See* Meyer affidavit attached to Plaintiffs' Response, ¶¶ 5–6. Thus, we are to conclude, if the requisite number of notices are not among that paperwork, then they simply were not given to the Plaintiffs.

 Plaintiffs' evidence derives from Mr. Meyer's syllogism and is to no small degree self-serving; however, it is nonetheless probative. The Court is mindful that at summary judgment evidence is not to be weighed. Instead, the opposing party's proof is viewed in the most favorable light. For present purposes then, it is sufficient to survive summary judgment.

*TILA—Disclosure of the Deadline to Rescind*

 The second alleged defect goes to the *content* of the Notice of Right to Cancel. Plaintiffs allege that the notice fails to state a deadline for exercising the right to rescind the loan. Regulation Z provides:

> The notice shall identify the transaction or occurrence and *clearly and conspicuously disclose* the following:
> (1) The retention or acquisition of a security interest in the consumer's principal dwelling.
> (2) The consumer's right to rescind, as described in paragraph (a)(1) of this section.
> (3) *How to exercise the right to rescind,* with a form for that purpose, designating the address of the creditor's place of business.
> (4) The effects of rescission, as described in paragraph (d) of this section.
> (5) *The date the rescission period expires.*

12 C.F.R. § 226.15(b) (emphasis added). In disputing Plaintiffs' claim, the Defendants rely yet again on the copy of the Notice of Right to Cancel in their possession. They contend that their copy of the notice is complete. And again, Plaintiffs' rely on the copy which they say that they were given. That copy, Plaintiffs maintain, is not completely filled-out. The Notice in Plaintiffs' possession is reproduced below:

## NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: May 13, 2004
LOAN NO.: 0058707993–9604
TYPE: FIXED RATE

BORROWER(S): JAMES A. MEYER

ADDRESS: 105 TIMBER SPRINGS LANE
EXTON, PA 19341

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. The date of the transaction which is ; or

**ENTER DOCUMENT SIGNING DATE**

_____

2. The date you received your Truth–In–Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC ATTN: FUNDING
3 Park Plaza PHONE: (800)–561–4072
Irvine, CA 92614 FAX: (714)–347–1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**

_____

(or MIDNIGHT of the third business day following the later of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____ _____

SIGNATURE DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96–221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

| | | | |
|---|---|---|---|
| BORROWER/OWNER JAMES A. MEYER | Date | BORROWER/OWNER MARY E. MEYER | Date |
| BORROWER/OWNER | Date | BORROWER/OWNER | Date |

**BORROWER COPY**

Ex. C to Complaint.

A review of the Notice used by Argent reveals that they have adopted Model Form H–8 from Regulation Z. *See* 12 C.F.R. § 226, App. H. To that form, Argent has made two changes, one substantive and the other functional. The substantive change inserts a form of acknowledgment to be signed by the borrowers. It memorializes their receipt of the notices and disclosures required by TILA. *See* 15 U.S.C. § 1635(c) (providing that written acknowledgment of receipt of TILA disclosures creates rebuttable presumption of delivery). No signature, however, appears on the form produced by Plaintiffs. The functional change adds the imperative phrases "ENTER DOCUMENT SIGNING DATE" and "ENTER FINAL DATE TO CANCEL" in rectangular boxes. Presumably, they were inserted by Argent to prompt its agent to fill in those dates at the closing. Once that information was filled in, then the notice would be given to the borrowers as required by the statute. For whatever reason, Argent's agent failed to fill in those two boxes on the borrower's copy. What is the effect of that?

 Under both TILA and Regulation Z, the test for disclosure of the rescission right is whether the form of notice that the *lender provided* constitutes a clear notice of that right. *See Porter v. Mid–Penn Consumer Discount Co.*, 961 F.2d 1066, 1076 (3d Cir.1992) ("the law does not require an ideal notice of rescission rights, just a clear, accurate and conspicuous one.") On this form, the right to rescind can be clearly disclosed only if those two dates are filled in. Typically, the final date to cancel will be three days after the date of the transaction. But that is not always the case: it is possible that not all of the TILA disclosures and notices will be given at the closing. If they are not, then the three days might pass without the borrower knowing that they had a right to rescind. To guard against that happening, the form states that the rescission period begins to run from the LATER of three specified events: the date of the transaction, the date that the borrowers received their TILA disclosures, or the date that they received the notice of right to cancel. If the form never states the date of the transaction, then the borrower cannot tell which event *occurred last*. In short, the borrower would not be informed of when the rescission period begins to run. That renders the notice ambiguous. Where there is any uncertainty, the Court must find a TILA violation. As the Third Circuit has explained

> TILA achieves its remedial goals by a system of strict liability in favor of the consumers when mandated disclosures

have not been made. A creditor who fails to comply with TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent. Once the court finds a violation, no matter how technical, it has no discretion with respect to liability.

*Porter, supra* 961 F.2d at 1078 citing *Smith v. Fidelity Consumer Discount Co.,* 898 F.2d 896, 898 (3d Cir.1990). No court has found that a creditor's failure to fill in the blank designated for the rescission deadline is excusable. *See Johnson v. Chase Manhattan Bank USA, N.A.,* 2007 WL 2033833 *4 (E.D.Pa.) (citing cases); *see also Apaydin v. Citibank, F.S.B. (In re Apaydin),* 201 B.R. 716, 718 (Bankr. E.D.Pa.1996) (finding that notice of right to rescind which failed to state when rescission period expired as well as lender's business address violated TILA).

But what of Argent's argument that *its* copy of the Notice of Right to Cancel has boxes filled in and bears acknowledgment of receipt by both borrowers? The problem with that argument is that it is not Argent's copy of the notice but the Plaintiffs' that matters. It appears from that evidence that the Plaintiffs departed the settlement table without having received this disclosure. The Court does not deny the probative value of the acknowledgment on Argent's copy. It states that the Plaintiff acknowledge having received fully executed notices. However, at the summary stage evidence is not to be weighed. The fact that the Plaintiffs acknowledged receipt of the fully executed notices does not negate the existence of contrary evidence. And that is where the Court's focus must lie. That evidence supports Plaintiffs' claim that the lender never disclosed to them their right to rescind the loan. So it remains a triable issue of fact. On that basis then, the Court finds that the sub-stantive TILA claim survives summary judgment.

*Countrywide's Affirmative Defense to TILA Liability*

 That finding, Countrywide maintains, should not subject *it* to liability. It has, it believes, an affirmative defense to that claim. Instead of being the original lender, Countrywide points out that it was an assignee who purchased the note in good faith. In other words, Countrywide had no knowledge, or reason to know, of the TILA violation when the loan was assigned. TILA § 1641 addresses the circumstances under which an assignee may be liable for violations committed by the prior holder. For loans—such as this one—which are secured by real estate, the statute provides as follows:

(e) Liability of assignee for consumer credit transactions *secured by real property*

(1) In general

Except as otherwise specifically provided in this subchapter, any civil action against a creditor for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, *with respect to a consumer credit transaction secured by real property* may be maintained against any assignee of such creditor only if—

(A) the violation for which such action or proceeding is brought is *apparent on the face of the disclosure statement* provided in connection with such transaction pursuant to this subchapter; and

(B) the assignment to the assignee was voluntary.

15 U.S.C. § 1641(e)(1) (emphases added); *see also Ramadan v. Chase Manhattan Corp.,* 229 F.3d 194, 199 (3d Cir.2000) ("Section 1641(e) creates assignee liability for TILA violations in transactions *secured by real property.*") And importantly for present purposes, § 1641(e) provides its

own definition of the phrase "apparent on the face of the disclosure statement:"

> For the purpose of this section, a violation is apparent on the face of the disclosure statement if—
>
> (A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement. . . .

15 U.S.C. § 1641(e)(2). At the deposition of Mr. Meyer, Countrywide took pains to establish that the Plaintiffs were not accusing Countrywide of having actively violated TILA. Countrywide Brief, 12–13 quoting Ex. C, J. Meyer Dep. at 52–53 Any liability on the part of Countrywide, then, would have to be vicarious. The effect of that, Countrywide concludes, is to place "a very limited burden on the assignee." *Id.* 14. They understand themselves to be required to look only at the face of the TILA disclosure statement, the itemizations of the amount financed, the notes, and other disbursement disclosure documents. *Id.* 15. None of these documents alerted Countrywide that something was amiss. *Id.* 17.

The Court is inclined to agree with Countrywide on this point. Its exercise of due diligence required only that it look at those documents in Argent's possession to determine if the loan was properly made. Of those documents, a colorable TILA violation has been raised only as to the Notice of Right to Cancel. The copy of the notice in Argent's possession contained the crucial information which rendered the copy of Plaintiffs' possession deficient. Argent's copy, indicated so by the words "LENDER'S COPY" which appear at the bottom, has both the document signing and final date to cancel boxes filled in. The Plaintiffs' signature also appear below as acknowledging receipt of the notices.

That was the copy which would have been presented to Countrywide as an assignee. There does not appear to be anything wrong with that notice. For that reason, the Court finds that Countrywide—even if it did own the note at some point in time—cannot be liable under TILA for failure to disclose the right of rescission.

*Timeliness of the TILA Damage Claim*

 For its part, Argent raises an affirmative defense of its own. Regardless of liability, Argent asserts that such a claim is stale at least for purposes of collecting damages. Argent's Brief, 17–18; Trans. 9/20/07 @ 20. That form of relief is subject to a one year statute of limitations:

> (a) Individual or class action for damages; amount of award; factors determining amount of award
>
> . . .
>
> (e) *Any action under this section may be brought* in any United States district court, or in any other court of competent jurisdiction, *within one year* from the date of the occurrence of the violation
>
> . . .

15 U.S.C. § 1640(a),(e) (emphasis added). *See Oldroyd v. Associates Consumer Discount Co.*, 863 F.Supp. 237, 240 (E.D.Pa. 1994) ("Actions under the Truth in Lending Act must be brought within one year of the violation, though a consumer may raise violations of the Act as a defense to a collection action after the expiration of the filing period."). Because the disclosures are required to be made before the credit is extended (*see* 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.17(b)), the violation occurs when the loan is made. *Ralls v. Bank of New York (In re Ralls)*, 230 B.R. 508, 515 (Bankr.E.D.Pa.1999). The applicable regulation provides that "[t]he creditor shall make disclosures before consummation of the transaction." *See* 12 C.F.R. 226.17(b); *see also Chevalier v. Baird Sav. Ass'n*, 371 F.Supp. 1282, 1284 (E.D.Pa.1974) ("The date of the violation is deemed to be the

date the transaction was consummated"); *Smith v. EquipCredit Corp.*, 2002 WL 32349873 *3 (E.D.Pa.) (same); *McMaster v. CIT Group/Consumer Finance, Inc.*, 2006 WL 1314379 *4 (E.D.Pa.) ("A violation occurs when a consumer becomes contractually obligated on a credit transaction" citing 12 C.F.R. § 226.2(13))

In this case, Argent points out, the loan closed (that is, the transaction consummated) on May 13, 2004. See Argent's Brief, 17; Complaint, ¶ 5. The Complaint, however, was not filed until February 5, 2007, a date well more than two years from the date of the violation. *See* Adversary Docket, 07–0031 # 1. As a result, Count I's claim for monetary damages is time-barred.

*TILA—Rescission*

■ In addition to monetary damages, the Plaintiffs desire to rescind this loan. Countrywide argues that it is too late for that: TILA rescission claims are subject to a three-year statute of repose. Those three years for this claim expired on May 13, 2007. Countrywide's Brief, 7–11. While Plaintiffs may have made a formal demand to rescind before that date, it failed to make that demand upon the present holder.[11] Instead, it served that request upon the prior holder of the loan, Argent, and the servicer, Countrywide. Plaintiffs sought to amend the complaint to add the present holder, Deutsche, but by that time, the cause of action had expired making any amendment futile. There is then no basis upon which Plaintiffs may rescind this loan.

*TILA—Failure to Identify the Holder or Master Servicer*

■ Merely because a borrower may not rescind does not mean that they are not entitled to damages incurred when trying to rescind. TILA § 1635 provides:

> In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

15 U.S.C. § 1635(g). The Court has already found that the record supports the claim that Argent violated TILA in failing to disclose Plaintiffs' rescission right. While rescission is not possible, Plaintiffs have demanded damages incurred while trying to rescind. *See* Amended Complaint, Count I, Demand. Have either of the Defendants otherwise "violat[ed] this subchapter"?

*Disclosure Under TILA § 1641(f)(2)*

■ The Court finds that before they even filed suit, Plaintiffs made a timely demand for information about their loan. TILA § 1641 provides:

> [ ]Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

15 U.S.C. § 1641(f)(2). Plaintiffs' request for this information was made in the form of a letter. On January 2, 2007 Plaintiffs' Counsel wrote Countrywide and Argent requesting three things: first, that either recipient identify the name and address of the owner or master servicer of the loan; second, that they provide certain information pursuant to the RESPA[12]; and, third,

---

11. The parties appear to agree that Deutsche is the owner of the loan. *See* Motion to Amend Complaint; Trans. 8/28/07 @ 6.

12. RESPA imposes a duty upon loan servicers to respond to certain borrower inquiries. *Hopkins v. First NLC Financial Services, LLC (In re Hopkins)*, 372 B.R. 734, 746 (Bankr.

that they rescind the loan on account of alleged violations of TILA. *See* January 2 Letter attached to Countrywide's Brief, Ex. F. Countrywide responded to that letter one week later. Its January 9 response acknowledged receipt of Plaintiffs' letter and indicated that it would comply as required under RESPA. It did not identify either the master servicer or owner of the loan; its only reference to that request was to state in the abstract the duties of a "loan servicer" upon receipt of a Qualified Written Request under RESPA. *See* Countrywide's Letter of January 9, 2007 attached to its Brief as Ex. G.[13] Plaintiffs would file suit about one month after that. *See* Docket. By March 30, Countrywide had retained counsel who responded in another letter. Similarly, that letter fails to identify a "master servicer" or owner of this loan. It mentions only that "Countrywide acquired the servicing of the loan effective with the October 1, 2004 payment." *See* Letter of March 30, 2007 attached as Ex. E to Countrywide's Brief. Plaintiffs now contend that Countrywide should be estopped from arguing that it is not the owner for purposes of either (1) allowing them to rescind this loan or (2) collecting damages for Countrywide's refusal to honor a valid rescission request. Plaintiffs' Brief in Opposition to Countrywide's Motion, 8; Trans. 8/28/07 @ 6, 8; Trans. 9/20/07 3–5. Countrywide disputes that it failed to give the requested information. *See* Countrywide, Reply Brief, 4. At the hearing on August 28, its counsel explained:

> We were never asked to identify the owner, certainly not in discovery. The QWR, which I think is what Mr. Scholl is referring to, asks us to identify either the owner or the servicer and provide the name, address, et cetera, for one or the other. We provided it for the servicer.
>
> Now, candidly, I wished we just had provided both, to be frank with you, your Honor. But we did abide by the letter—by the letter of the request. We identified the assignor. If there was any further information they wanted, it was incumbent upon the plaintiffs to serve the requisite discovery and get to the bottom of this. It's—it's—it's their burden.

Trans. 8/28/07 @ 13. The Court finds this statement to be mystifying, to say the least. It is correct for Countrywide to say that *in discovery* it was never asked to identify the owner. But that is beside the point: they were required to furnish that information before the Plaintiffs sued them.[14] Countrywide is *in* correct in saying that Plaintiffs' counsel asked them to identify either the owner or servicer. The letter asked for the name of the owner or "master servicer." The distinction is significant. A "master servicer" means "the

---

E.D.Pa.2007) *citing Griffin v. Citifinancial Mortg. Co., Inc.,* 2006 WL 266106, at *2 (M.D.Pa.2006). This part of Plaintiffs' letter is known under RESPA as a "qualified written request" and is defined as

a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides

sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B)(i)-(ii).

**13.** Neither did the January 9 response mention the rescission request.

**14.** *See* www.hud.gov/offices/hsg/sfh/res/rights mtgesrvcr.cfm ("Your Rights and the Responsibilities of the Mortgage Servicer" explaining that if the borrower has questions or problems with the servicing of the loan, the servicer is required to respond to the borrower).

owner of the right to perform servicing, which may actually perform the servicing itself or may do so through a subservicer." 24 C.F.R. § 3500.21(a). A "subservicer", in turn, is "a servicer who does not own the right to perform servicing, but who does so on behalf of the master servicer." *Id.* This contemplates the possibility that a subservicer may not know who the owner is—after all, they are not in privity—but should certainly know the identity of the master servicer. So if Countrywide was indeed only a subservicer of this loan, then it should have identified itself as such and disclosed the name of the master servicer. Plaintiffs could then have made the same request upon that entity. A request upon the master servicer would have yielded the name of the owner. If, on the other hand, Countrywide were the master servicer, then it should have said so and Plaintiffs would have requested *from it* the name of the owner. Either response would have sufficed under TILA. Instead both letters essentially ignore the request for information. This belies Countrywide's claim that it complied with the letter of the request.

But more than that, the Court finds the March 30 letter to be misleading. In two instances, Countrywide characterizes itself more as a lender than as a servicer:

> As to your position that *Countrywide did not comply* with the Truth-in-Lending Act. We find your position to be without merit. Our review of your clients' transaction confirms that all material disclosures were accurately provided to your clients and that they executed the Lenders copy of the Notice of Right to Cancel, acknowledging their receipt of two (2) completed copies of the document each.
>
> . . .
>
> Similarly, your claim that the two Settlement Statements you enclosed created confusion is equally without merit. The

attached HUD Settlement Statement, which was signed by both James and Mary Meyer, clearly shows the disbursements and third party fees associated with the loan.

> Based on the foregoing, we deny your claim that *Countrywide did not comply* [sic] Truth in Lending Act and respectfully decline your demand for rescission of this loan.

*Id.* (emphasis added). Plaintiffs insist that anyone reading those two sentences would fairly conclude that Countrywide was, indeed, the owner. *See* Trans. 8/28/07 @ 8. They add it is possible for a servicer to also own the loan. *See* Trans. 9/20 @ 3–4; see also 15 U.S.C. § 1641(f)(1) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.") Moreover, the Proof of Claim filed by Countrywide does not indicate in any way that it is the servicer. *See* Trans. 8/28/07 @ 5; *see also* Claims Register, # 7. Is this enough to estop Countrywide from arguing that it was never a creditor, i.e., a holder of the loan?

To establish equitable estoppel, a party must prove: (1) intentional or negligent misrepresentation of some material fact; (2) made with knowledge or reason to know that the other party would rely upon it; and (3) inducement of the other party to act to its detriment because of justifiable reliance on the misrepresentation. *Boyd v. Rockwood Area School District,* 907 A.2d 1157, 1168 (Pa.Cmwlth.2006) The identity of the holder of the loan was absolutely critical (i.e., material) to the Plaintiffs' exercise of their rescission right. From Countrywide's choice of phrasing in its March 30 letter, one would conclude that it both owned and serviced the loan. The allegations to which its letter alludes

do not include acts typical of loan servicing. Instead, the alleged TILA violations involve non- and misfeasance of a lender. It is the lender whose responsibility it is to make the required TILA disclosures. There is simply no legitimate reason for Countrywide to deny these allegations substantively when all it had to do was to refer that inquiry to the holder of the loan. But it chose not to do that. The effect of that is to have falsely suggested to Plaintiffs that Countrywide was, indeed, the owner. That rendered Plaintiffs justified in investigating the ownership question no further. The upshot of all this is that Plaintiffs would not learn of the owner's identity until it was too late to rescind. Had Countrywide satisfied the requirement of TILA § 1641(f)(2), Plaintiffs' rescission right would likely not be prejudiced. There is, however, nothing that can be done about that now: the rescission right has expired. *See, supra,* futility discussion, 540–43. But for purposes of a damage claim arising out of the attempt to rescind, the Court finds evidence sufficient to estop Countrywide from denying that it is a creditor in this context. This matters because TILA punishes a creditor who violates any requirement of the statute:

> any creditor who fails to comply with any requirement imposed *under this part* [15], including any requirement under section 1635 ... with respect to any person is liable to such person in an amount equal to the sum of—
>
> (1) any actual damage sustained by such person as a result of the failure;
>
> ...

> (3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1640(a) The record contains evidence sufficient to estop Countrywide from denying that it was a holder (i.e., a creditor) in this transaction. It also contains proof that Countrywide failed to disclose the information that it was required to provide under TILA § 1641(f)(2). On that basis, the TILA claim against Countrywide survives summary judgment for purposes of collecting damages.

*UDAP Derivative Claims*

 That leaves the UDAP count. Having found the record to support Plaintiffs' claim that Argent violated TILA, the Court finds *ipso facto* a violation of UDAP. *See In re Milbourne,* 108 B.R. 522, 544 (Bankr.E.D.Pa.1989) ("a violation of TILA may also constitute a violation of UDAP") [16] Moreover, TILA is not the only consumer protection statute from which Plaintiffs would derive UDAP liability. They also allege that Argent and Integrated violated the Pennsylvania Credit Services Act [17] and the Loan Brokers Trade Practices Regulations [18] when they made this loan to the Plaintiffs. Violations of those two laws, Plaintiffs correctly point out, establish liability under UDAP. *See In re Barker,* 251 B.R. 250, 260 (Bankr. E.D.Pa.2000) ("[A]ny violations of Pennsylvania's Credit Services Act (CSA) are deemed to be violations of the state's

---

**15.** The "part" referred to is Part B–Credit Transactions, 15 U.S.C. §§ 1631 to 1649.

**16.** Although the TILA is independently time-barred, the UDAP claim remains viable. A six-year limitations period applies to that statute. 42 Pa.C.S.A. § 5527(b); *Lesoon v. Metro-*

*politan Life Ins. Co.,* 898 A.2d 620, 627 (Pa.Super.2006).

**17.** 73 P.S. § 2181 et seq.

**18.** 35 Pa.Code § 305.1 et seq.

UDAP statute"); *and see also Kimberton Chase Realty Corp. v. Main Line Bank*, 1997 WL 698487 *9 (E.D.Pa.) (holding that UDAP claim premised on LBTPR violation survives motion to dismiss) [19]

■ Argent argues that neither the act nor the regulation applies to it. *See* Argent Brief, 18. The CSA prohibits certain specified acts committed by "credit service organizations." *See* 73 P.S. § 2183. A "credit service organization" is defined as

(1) A person who, with respect to the extension of credit by others, sells, provides or performs or represents that he or she can or will sell, provide or perform any of the following services in return for the payment of money or other valuable consideration:

(i) Improving a buyer's credit record, history or rating.

(ii) Obtaining an extension of credit for a buyer.

(iii) Providing advice or assistance to a buyer with regard to either subparagraph (i) or (ii).

73 P.S. § 2182(1). That definition goes on to specifically exclude:

(i) Any person organized, chartered or holding a license or authorization certificate *to make loans or extensions of credit* pursuant to the laws of the Commonwealth or the United States who is subject to regulation and supervision by an official or agency of the Commonwealth or the United States.

73 P.S. § 2182(2)(emphasis added) Similarly, a "loan broker" under the LBTP is defined as

A person, copartnership, association or corporation engaged in providing services for the purpose of procuring or attempting to procure a loan on behalf of a borrower where a fee or other

valuable consideration is charged for the services. The term does not include a person, copartnership, association or corporation expressly regulated by a regulatory body or officer of this Commonwealth or of the United States, such as State and nationally chartered banks, savings and loan associations and their regulated subsidiaries.

37 Pa.Code § 305.2. Does anything in the record establish that Argent is either a "credit services organization" or a "loan broker" as defined by their respective statutes?

The Amended Complaint fails to allege that Argent is a credit services organization, salesperson, agent or representative thereof. It identifies Argent only as the original lender in this transaction. Aside from pleadings, their motion and the record is devoid of proof on that score. The Plaintiffs also make no averment in the pleadings or in their response to the summary judgment motions to establish that Argent is a "loan broker" under the LBTP. By definition, then, Argent would appear to be excluded from both the CSA and the LBTP. *See Stuart v. Decision One Mortgage Co. (In re Stuart)*, 367 B.R. 541, 556 (Bankr.E.D.Pa.2007) (holding that original lender not liable under either CSA or LBTP where complaint failed to allege lender as actor under either law) On this record, the Plaintiff have failed to support their claim that Argent has violated either the CSA or LBTP. Accordingly, they cannot establish UDAP liability on that basis.

*Whether Argent Independently Violated UDAP*

■ Aside from derivative violations of the statute, Count III alleges that both Argent and Integrated violated UDAP by engaging in simple fraud and deceit. It is alleged that

---

**19.** Again, the UDAP claim is not leveled against Countrywide.

by the exchange of consideration between them, which affected the terms of the loan in manners not disclosed to the Plaintiffs, both Defendants engaged in a concerted plan to purport to provide financial services with an intent not to provide same as represented and to knowingly misrepresent that services such as were provided were needed when they were not needed, as well as engaging fraudulent and deceptive conduct which was calculated to and did create confusion and misunderstanding in the mind of susceptible consumers such as the Plaintiff in violation of [UDAP] §§ 201–2(4)(v), (xv), and (xxi).

Amended Complaint ¶ 25. The UDAP provisions cited in that paragraph are the following "unfair or deceptive acts or practices":

subsection (4)(v): "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have";

subsection (4)(xv): "Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed"; and

subsection (4)(xxi): "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."

Although it cites subparagraphs (v) and (xv), ¶ 25 of the Amended Complaint does not describe conduct covered by those provisions. What the paragraph does allege is the knowing misrepresentation and fraud or deception which confused or mislead these Plaintiffs *qua* consumer. Plaintiffs believed that the broker was procuring for them a loan at the lowest possible interest rate. As it turned out, their claim goes on, they were getting anything but. Unbeknownst to them, Plaintiffs were being charged a higher rate of interest to make up for the extra broker's fee (i.e., the yield spread premium). This was part of a scheme (i.e., the "collaboration") to deceive the Plaintiffs. *See* Plaintiffs' Brief in Response to Argent's Motion, 3.

Argent understands Plaintiffs to be premising the claim against them on an agency relationship between Argent and the broker. That, however, is not how the Court reads this argument. The Amended Complaint uses terms such as "collaboration," and "concerted action"; their brief characterizes their conduct as a "scheme" and a "deception." This does not connote vicarious liability. Instead, it suggests some joint effort to achieve a wrongful end. In other words, what is intimated here is a conspiracy.[20] "Under Pennsylvania law, a civil conspiracy requires (1) two or more persons who combine or agree with an intent to do an unlawful act or to do an otherwise lawful act by unlawful means, and (2) proof of malice, i.e., an intent to injure." *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F.Supp.2d 400, 410 (W.D.Pa.2002) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 472 (1979)).

---

**20.** To be sure, the issue of agency has come up in this litigation—in respect to the attempt to rescind as against Deutsche Bank—but Plaintiff never couch their UDAP claim against Argent as based on agency law. Even if they did, the evidence produced by Argent demonstrates that the broker dealt with both the borrowers and the lenders in this transaction at arms length. *See* Argent Brief, Ex. A, Mortgage Loan Origination Agreement, § 1 (stating that broker is independent contractor with respect to both borrower and lender); *see also Hawthorne v. American Mortgage, Inc.*, 489 F.Supp.2d 480, 485 (E.D.Pa.2007) (finding that mortgage broker is not agent for lender based on documentation highly similar to instant case).

Is there any proof of a conspiracy between Argent and Integrated to violate UDAP?

The record does not offer any. There is simply nothing to indicate a plan to confuse or deceive the Plaintiffs. All Plaintiffs offer is their belief that they would be getting a lower rate. But what evidence supports that claim? What there is proves the contrary: the Mortgage Origination Loan Agreement explains that the broker and Argent operated independently. *See* Argent Motion, Ex. A § 1. It further explains that the broker enters into separate independent contractor agreement with various lenders. *Id.* Moreover, the broker does not guarantee the lowest price or best terms available in the market. *Id.* A self-serving statement of what the Plaintiffs' thought they would be getting is not probative. It simply does not keep the issue triable for purposes of defeating summary judgment.

Likewise, the same evidence would not support an independent violation of UDAP against Argent. In order to establish UDAP liability, the Plaintiffs would have to show that Argent's business (that is, the providing of this type of secured financing) constitutes a "trade" or "commerce" within the act, 73 P.S. § 201–3; that the act grants them a private cause of action for injuries sustained from the loan. 73 P.S. § 201–9.2; and that the actions of which they complain are either unfair or deceptive and fall within one of the 21 specific acts enumerated by § 201–2, which are declared unlawful by § 201–3. *See In re Smith,* 866 F.2d 576, 581 (3d Cir.1989).

■■■ Neither party would dispute that Argent's business constitutes a trade or commerce within the act. Neither would they dispute that allegations of deception or misrepresentation are subject to UDAP. Where they disagree is on whether there is proof of unfair or deceptive conduct on the part of Argent. Plaintiffs are relying

here on the final example of an unfair and deceptive act: that Argent's action created a likelihood of misunderstanding or confusion on Plaintiffs' part. *See* Amended Complaint, ¶ 25; 73 P.S. § 201–2(4)(xxi). Under this "catchall" provision of Pennsylvania's Unfair Trade Practices Act, the plaintiffs may prove either common law fraud or deceptive conduct. *In re Crisomia,* 2001 WL 1924616 *2 (Bankr.E.D.Pa.). Is there evidence here of either fraud or deception?

■■■ The Court finds none. There is simply no misrepresentation or misstatement which the Plaintiffs can point to here. Again, Plaintiffs' UDAP claim is based on their belief that they would be getting the lowest possible interest rate. However, they never explain the basis for that belief: was it based on a representation from either Argent or Integrated? Plaintiffs never say. Moreover, the only document relevant to the procuring of a mortgage loan on their behalf does not state any such warranty. *See* Argent Brief, Ex. A, Mortgage Loan Origination Agreement. In fact, it specifically disclaims any guaranty as to rates. *Id.,* § 1 That same document goes on to explain that the lender might pay the broker an additional fee which would result in a higher interest rate on the loan. *Id.,* § 2 All the documentary evidence then is to the contrary. And aside from documentation, any duty to provide the lowest rate may not be implied as a matter of law. "Pennsylvania courts have held that a lender is not a fiduciary of a borrower." *In re Johnson,* 292 B.R. 821, 828 (Bankr.E.D.Pa.2003). Without any evidence to support Plaintiffs' claim that Argent deceived it or is otherwise guilty of misrepresentation or fraud, the Court finds no independent violation of UDAP.

*Summary of Ruling on Motions for Summary Judgment*

Both moving parties are successful but only in part. The TILA claim for monetary damages against Argent fails because that claim is time-barred. Similarly, the TILA claim for rescission based on that non-disclosure has expired. However, that same violation constitutes a per se claim under UDAP so that claim against Argent will survive summary judgment. Finally, the Court finds that the evidence supports a TILA claim against Countrywide for its refusal to disclose the identity of the owner of the note. That claim will similarly survive summary judgment.